**Fen Yong CHEN, Petitioner,**

v.

**BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES, Respondent.**

**Docket No. 04–5748–AG.**

United States Court of Appeals, Second Circuit.

Argued: May 18, 2006.

Decided: Nov. 29, 2006.

Theodore N. Cox, New York, N.Y. (Milan Bhatt and Haley Stein, on the brief), for Petitioner.

Mary E. Flemming, Assistant United States Attorney (Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, on the brief) for Respondent.

Before MINER and POOLER, Circuit Judges, and RAKOFF, District Judge *.

POOLER, Circuit Judge.

This petition for review concerns the order of the Board of Immigration Appeals ("BIA") sustaining the government's appeal of Immigration Judge ("IJ") Philip L. Morace's decision granting Petitioner's request for political asylum. The IJ determined that Petitioner was credible and had satisfied his burden of demonstrating past persecution in light of Petitioner's wife's forced abortion in China by family planning officials. *See In re Chen,* No. A 29

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

846 062 (Immig. Ct. N.Y. City June 9, 2003). The BIA vacated the IJ's decision and ordered Petitioner removed to China, finding that the IJ's positive credibility determination was erroneous. *See In re Fen Yong Chen*, No. A 29 846 062 (B.I.A. Oct. 14, 2004). Because we find that the BIA improperly conducted a de novo review of the IJ's credibility finding, we conclude that the BIA erred in vacating the IJ's decision. The petition for review is therefore granted, and the case is remanded to the BIA for further proceedings consistent with this opinion.

## BACKGROUND

### Petitioner's 1994 Asylum Application

Petitioner Fen Yong Chen, a native and citizen of China, filed an application for asylum and withholding of removal in August 1994. Chen's asylum claim was based on China's population control policy. In his application, Chen stated that his wife was subjected to a forced abortion, although he did not specify the date of this abortion or give any other details regarding the abortion in his application. Chen further stated that when his wife was pregnant with their second child, he was seized by three government officials and taken to a local police station where he was beaten. Chen's statement indicated that he was released from prison after he bribed a guard. Chen's application further stated that he learned by telephone that

family planning officials continued to harass his wife after he left China, and she was forced to undergo sterilization after the birth of their second child.

In August 1995, an asylum officer evaluated Chen's application and heard testimony from Chen regarding the merits of his claim. The asylum officer found Chen not credible because of inconsistencies between Chen's testimony and his written application. The asylum officer further found that because Chen had testified that he feared returning to China because he owed money to his former employer, Chen had failed to satisfy his burden of proving he was a refugee. The asylum officer referred Chen's application to the IJ. After a hearing before the IJ in May 1996, Chen withdrew his application and was granted voluntary departure. *See In re Chen*, No. A 29 846 062 (Immig. Ct. N.Y. City May 28, 1996).

### Petitioner's 2002 Asylum Application

In May 2002, Chen filed a motion to reopen his proceedings, relying on the BIA's decision in *In re X–G–W–*, 22 I. & N. Dec. 71 (B.I.A.1998), which permitted motions to reopen asylum claims based on coercive population control programs in light of changes in the asylum laws created by passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996[1] ("IIRIRA").[2] Chen subsequently submitted a second asylum application, re-

---

1. Section 601(a)(1) of the IIRIRA amended the definition of refugee by adding the following:

    [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to

    persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

    Pub.L. No. 104–208, 110 Stat. 3009 (codified at 8 U.S.C. § 1101(a)(42)).

2. Since the government did not oppose Chen's motion to reopen on the ground that Chen did not voluntarily depart, we need not address whether that failure, without more, would act as a bar to any relief.

iterating the information from his first application that his wife was forced to have an abortion, and specifying that this abortion occurred in August 1984. Chen further explained in his 2002 application that after the birth of his first child in 1979, family planning officials required that his wife have an IUD surgically inserted and that he and his wife sign a contract promising not to have any more children. In April 1984, Chen's wife learned she was pregnant again. Chen stated that he suspected a neighbor discovered the pregnancy and alerted family planning officials. On August 24, 1984, three family planning officials came to Chen's house and forcibly took his wife to the Hospital of Fujian Province, where she was forced to have an abortion. According to Chen, his wife became pregnant again in September 1988, and once again, a neighbor reported the pregnancy to the family planning officials. After the pregnancy was discovered, Chen stated that his wife went into hiding at her mother's home. Several days later, four family planning officials came to Chen's house to take his wife for a "check-up," but since his wife was not there, they arrested him instead as a "hostage." Chen stated that because he knew two of the officials personally, he was able to escape. He went to hide at a friend's house and eventually fled to the United States.

### Proceedings Before the IJ

At a hearing before the IJ, Chen testified to the events recounted in his 2002 asylum application, including his wife's forced abortion in August 1984, her third pregnancy in 1988, and his arrest by family planning officials. The IJ then inquired about the 1994 asylum application, which did contain a statement that Chen's wife had an abortion, but did not contain any further details regarding this abortion. Chen explained that the 1994 application had been prepared by a travel agency, and

he was not told the contents of the application before being instructed to sign it. Chen reiterated this explanation when asked about the inconsistency between his 1994 and 2002 accounts of how he had escaped from the family planning officials after he was arrested. Chen testified that the statement in the 1994 application that he had bribed a prison guard was not correct, and, as he indicated in the 2002 application, he escaped because he personally knew two of the officials who arrested him. Chen also acknowledged that although the 1994 application indicated that his wife had been sterilized, this had not in fact occurred.

At the conclusion of the hearing, the IJ rendered his oral decision granting Chen's application for political asylum. The IJ noted the discrepancies between Chen's 1994 and 2002 applications, but found that the 1994 application must be weighed carefully in light of Chen's testimony that it "had not been prepared on his behalf by attorneys, but rather by these so-called travel agents, non-attorneys, and that [Chen] was instructed to sign the application without having the full contents of the application read back to him first, not necessarily fully aware of the contents of the document." With respect to the asylum interview in 1995, the IJ ruled that he would admit the asylum officer's evaluation and notes from the 1995 asylum interview into evidence, but would "weigh them very cautiously for a variety of reasons," including that the officer was not available for cross-examination and that the quality of the interpreter used in the interview was unknown. The IJ also emphasized that Chen's first asylum application was filed prior to passage of the IIRIRA, which expanded the definition of refugee to specifically include those subjected to a coercive population control program. The IJ reasoned that the asylum officer conduct-

ing the interview in 1995—prior to passage of the IIRIRA—would not have been motivated to elicit details regarding Chen's fear of persecution based on China's family planning policies because such a fear did not provide a valid basis for asylum under then-existing law. The IJ further found that the interview appeared to be "basic and superficial," which was understandable given the legal impediment to Chen's asylum claim at that time. Thus, having evaluated Chen's testimony during the hearing and finding it to be "believable, consistent and sufficiently detailed to provide a plausible and coherent account of the basis for his fear," the IJ found Chen credible and granted his application for asylum.

### The BIA's Decision

The government appealed the IJ's decision to the BIA, arguing that the IJ's positive credibility finding was erroneous in light of the discrepancies between the *1994 and 2002 asylum applications.* On October 14, 2004, the BIA issued its order sustaining the government's appeal and vacating the IJ's decision. The BIA held that the IJ's credibility determination was "clearly erroneous" because of the inconsistencies between the 1994 application, the asylum officer's 1995 interview notes and assessment memorandum, and Chen's 2002 asylum application. The BIA rejected Chen's explanations for the discrepancies between the applications. In light of its adverse credibility finding, the BIA held that Chen had failed to establish past persecution or a well-founded fear of future persecution and denied Chen's claim for asylum. Since the BIA found that Chen had failed to satisfy his burden of proof on his asylum claim, the BIA held that Chen could not satisfy the higher burden of proof necessary to succeed on his withholding of removal claim, and de-

nied that claim as well. The BIA also found that Chen had failed to establish eligibility for CAT relief, and ordered Chen removed to China. Chen timely filed a petition for review before this Court.

### DISCUSSION

#### *Standard of Review*

■■■ When the BIA issues an opinion that does not adopt the decision of the IJ to any extent, the BIA's opinion "becomes the basis for judicial review of the decision of which the alien is complaining." *Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005) (citation omitted). We review factual findings, including adverse credibility determinations, under the substantial evidence standard, upholding them if they are supported by "reasonable, substantial and probative evidence in the record." *Id.* (citation omitted). On the other hand, "if the issue on appeal involves the proper application of legal principles to the facts and circumstances of the individual case at hand, our review has been *de novo.*" *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (citations omitted). We will vacate and remand BIA decisions "that result from flawed reasoning or the application of improper legal standards." *Rizal v. Gonzales,* 442 F.3d 84, 89 (2d Cir.2006); *see also Secaida–Rosales,* 331 F.3d at 307 ("[U]sing an inappropriately stringent standard when evaluating an applicant's testimony constitutes *legal,* not factual, error.").

#### *Analysis*

■■■ For all appeals filed after September 25, 2002,[3] the BIA is no longer permitted to engage in de novo review of an IJ's factual findings. *See* 8 C.F.R. §§ 1003.1(d)(3)(i), 1003.3(f); *see also In re*

---

**3.** The government filed its appeal of the IJ's decision in this case on July 11, 2003.

*S–H–*, 23 I. & N. Dec. 462, 466 (B.I.A. 2002) ("Under the new regulatory provisions, the Board will not engage in de novo review of findings of fact determined by an Immigration Judge in any case in which the appeal is filed on or after September 25, 2002."). Rather, "[f]acts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous." 8 C.F.R. § 1003.1(d)(3)(i). Although the BIA cited the proper legal standard at the outset of its decision, it failed to apply this deferential standard of review when evaluating the IJ's credibility finding.

In reaching his decision, the IJ acknowledged the inconsistencies between Chen's testimony and his asylum interview in 1995. The IJ also noted, however, the problems with placing too much weight on the asylum interview because the asylum officer was not available for cross-examination, the quality of the interpreter used in the interview was unknown, and the asylum officer had little incentive to elicit any details about the abortion since at the time of the interview, forced abortion and sterilization were not grounds for asylum. The IJ similarly declined to place dispositive weight on the inconsistencies between Chen's 1994 and 2002 asylum applications due to Chen's explanation that the 1994 application was prepared by non-attorney travel agents, who instructed Chen to sign the application without reading it back to him. The IJ then concluded that after observing Chen's testimony, he found it "believable, consistent and sufficiently detailed to provide a plausible and coherent account of the basis for his fear, and for that reason, a positive credibility finding was made."

In reviewing the IJ's decision, the BIA did not point to any misstatements of fact, errors in analysis, flawed reasoning, or improper applications of law. Instead, the BIA started anew, conducting its own credibility analysis and concluding on that basis that the discrepancies between Chen's asylum applications and the asylum interview were dispositive of Chen's credibility without giving any deference to the findings of the IJ. The BIA decided to place significant weight on Chen's statements during the 1995 asylum interview, but gave no explanation for why it rejected the IJ's reasons for discounting the asylum interview or why the IJ's reliance on those reasons was erroneous. The BIA's decision, in fact, makes no mention of the concerns raised by the IJ, such as the asylum officer's lack of motivation to ask probing questions regarding Chen's claim during the pre-IIRIRA asylum regime, which the IJ found important to his decision. Similarly, the BIA gave controlling weight to the discrepancies between Chen's 1994 and 2002 asylum applications, but failed to explain why the IJ's decision to credit Chen's explanation for the discrepancies was clearly erroneous. The BIA, instead, simply chose to reject that explanation.

The BIA's substitution of its judgment for the IJ's is classic de novo review, which is no longer permitted under the applicable regulations. *See In re R–S–H*, 23 I. & N. Dec. 629, 637 (B.I.A.2003) (" 'A factfinding may not be overturned simply because the Board would have weighed the evidence differently or decided the facts differently had it been the factfinder.' ") (quoting Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed.Reg. 54,878, 54,889 (Aug. 26, 2002) (Supplementary Information)); *In re S–H–*, 23 I. & N. Dec. at 464 ("Under the new regulation, the Board must defer to the factual determinations of an Immigration Judge in the absence of clear error."); *see also Anderson v. Bes-*

*semer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (clear error standard does not permit the reviewing body to reverse the findings of the trier of fact "simply because it is convinced that it would have decided the case differently").

The Sixth Circuit addressed a similar issue in *Tran v. Gonzales,* 447 F.3d 937 (6th Cir.2006), in which the BIA, without specifying a standard of review, had reversed the decision of the IJ granting relief under the Convention Against Torture. *Id.* at 938. Tran had presented documentary evidence and expert testimony supporting his claim that he would be tortured if returned to Vietnam, which was credited by the IJ but then rejected by the BIA as deficient and speculative, without any indication as to why the IJ's reasoning was erroneous. *Id.* at 943–44. The court, unable to discern the standard of review used by the BIA, vacated the BIA's order and remanded the case, since "BIA review under an incorrect standard of review implicates Tran's due process rights." *Id.* at 944.

As in *Tran,* we find that remand is necessary in this case. Although the BIA used the phrase "clearly erroneous" in its opinion, the review it conducted in fact was to independently assess Chen's credibility without giving deference to the findings of the IJ. This is de novo review and constitutes legal error by the BIA requiring remand of Chen's asylum claim. Furthermore, since the BIA's denial of Chen's withholding of removal claim was based solely on its denial of his asylum claim, we remand that claim as well.[4]

**CONCLUSION**

For the foregoing reasons, we GRANT the petition for review, VACATE the order of the BIA, and REMAND the case for further proceedings consistent with this opinion.[5]

---

4. Chen does not appeal the BIA's denial of his CAT claim in his brief to this Court. Therefore, we deem this claim waived and do not address it here. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1 (2d Cir.2005) (holding that the petitioner abandoned his

challenge to the denial of his CAT claim by failing to discuss it in his brief).

5. In light of our decision vacating the BIA's order of removal, Chen's pending motion for stay of deportation is denied as moot.