United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2009

Charles R. Fulbruge III
Clerk

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 08-60585

ESPERANZA ALVARADO DE RODRIGUEZ

Petitioner

v.

ERIC H HOLDER, JR, U S ATTORNEY GENERAL

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before DAVIS, OWEN, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Esperanza Alvarado de Rodriguez ("Alvarado") appeals the Board of Immigration Appeals' ("BIA") decision, which overturned an Immigration Judge's order granting her a good-faith hardship waiver of the joint filing requirement of section 216(c)(4)(A) of the Immigration and Nationality Act ("INA"). Such a hardship waiver was required to remove the conditional nature of Alvarado's status, and the BIA's denial of the waiver meant she would be removed to Mexico. In her petition for review, Alvarado claims that (1) this Court has jurisdiction to consider her appeal; (2) the BIA incorrectly reviewed the Immigration Judge's findings of fact de novo; (3) the BIA's consideration of

a government-sponsored affidavit was improper; and (4) the BIA's eventual holding – that the marriage was not entered into in good faith – was erroneous. Because the BIA applied the incorrect legal standard to conclude that the marriage was not entered into in good faith, we REVERSE the order of the BIA and REMAND for further proceedings not inconsistent with this opinion.[1]

## I. Factual Background

Alvarado was a permanent U.S. resident on a conditional basis due to her marriage to an American citizen, Melecio Villafranco. Ordinarily, removal of the residency condition would require that the spouses file a joint petition. However, Alvarado and Villafranco separated, and he was unwilling to file a joint petition; in fact, he completed an affidavit requesting withdrawal of his alien relative petition soon after their break-up. To avoid deportation to her native country of Mexico, Alvarado was charged with establishing entitlement to a hardship waiver to excuse compliance with the joint filing requirement. In order to qualify for a hardship waiver under the "good faith" prong, Alvarado had to prove that her marriage was entered into in good faith and that she was not at fault in failing to meet the statutory condition. *See* 8 U.S.C. § 1186a(c)(4)(B).[2] The central question considered by the Immigration Judge (and later, the BIA) was whether Alvarado and Villafranco "intended to establish a life together at the time they were married" – that is, whether, at the time of their union, they married in good faith.

---

[1] Once the correct legal standard is properly applied to the facts of this case, it appears that the evidence would establish eligibility for a hardship waiver.

[2] Under this section, "[t]he Attorney General, in the Attorney General's discretion, may remove the conditional basis of the permanent resident status for an alien . . . if the alien demonstrates that – (B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated . . . and the alien was not at fault in failing to meet the requirements of paragraph (1) [requiring, among other things, a joint petition]." *Id.*

At a 2005 hearing before an Immigration Judge, Alvarado, her daughter, and a co-worker testified, and she presented documentary evidence to satisfy her evidentiary burden. Alvarado explained that in August of 1992, she fled to the United States with two of her children to escape an abusive relationship in Mexico. Alvarado initially moved in with her sister in Corpus Christi, Texas, and was soon joined by her son. She met Villafranco in 1993 when both lived in the same apartment complex. She became friends with Villafranco, and he would often drive her to run errands and buy groceries. Alvarado would share dinner with Villafranco. Villafranco assisted Alvarado with the purchase of her house in 1994. Although Villafranco was approximately 30 years older than Alvarado, she came to think of him as more than a friend.

When Villafranco proposed marriage in 1995, she did not hesitate to accept. Although Alvarado and Villafranco were married on October 5, 1995, Alvarado's divorce from her first husband was not finalized until 1996. Her status was adjusted from a non-immigrant visitor to a permanent resident on a conditional basis on June 16, 1997 based upon her marriage to Villafranco.

During their marriage, Alvarado lived with Villafranco, they bought groceries together, had meals together, and went to church together weekly. They held themselves out to be, and considered themselves to be, husband and wife. Alvarado testified that Villafranco moved in with her in 1995 and left her house in 1998. Alvarado stated that she outwardly professed her love for Villafranco and did indeed love him. Alvarado showed affection for Villafranco publicly, holding his hand and kissing him. Initially, Alvarado felt affection towards Villafranco. However, she contends that her feelings changed when Villafranco began to drink heavily and acted inappropriately toward her daughter and her daughter's friend. Alvarado testified that she did not agree to marry Villafranco for the purpose of obtaining immigration papers.

3

The Government attempted to impeach Alvarado's testimony, over objection, with an affidavit executed by Villafranco. In that document, Villafranco stated, among other things, that he did not begin living with Alvarado until 1997 and that she told him upon their separation that she did not love him. On cross-examination, Alvarado admitted that Villafranco slept in his own bedroom while she slept in a bedroom with her daughter.

Catalina Chavez, a co-worker of Alvarado, testified that she often saw Villafranco take Alvarado to and from work. Chavez also stated that Alvarado had surgery in 1996 and that Villafranco accompanied Alvarado to the hospital during this time. Chavez explained that she had observed Alvarado and Villafranco hold hands and be affectionate with each other, and she considered them to be married.

Gladys Enriquez, Alvarado's daughter, testified that she recalled Villafranco being a nice man who would drive her to school and drive her mother to work. Enriquez stated that Villafranco assisted the family in fixing the house and that Villafranco was always there. Enriquez also testified that Villafranco was a drunk and acted inappropriately toward one of her friends. Enriquez did not remember Alvarado showing physical affection towards Villafranco, but suggested that such affectionate conduct would be out of character for her mother. Enriquez was approximately eleven years old when Villafranco moved out of the house.

Alvarado submitted several documents as exhibits, including: (1) a declaration of marriage, dated October 5, 1995; (2) a divorce decree, dated December 4, 1998; (3) seven affidavits from friends and co-workers attesting to the bona fide nature of the marriage; (4) applications for life insurance which reflect that Alvarado and Villafranco were designated cross-beneficiaries; (5) Alvarado's 1997 hospital records indicating a designation of Villafranco as spouse and emergency contact, and documenting his conduct explaining medical

procedures to his wife; (6) Internal Revenue Service receipts reflecting Alvarado and Villafranco's status as "married filing jointly"; (7) utility bills for Alvarado's home sent to Villafranco's attention; (8) a 1995 school enrollment form for Alvarado's daughter naming Villafranco as emergency contact; (9) a record of a cemetery plot purchased by Villafranco using Alvarado's home address; (10) a written affidavit by Alvarado; and (11) a letter from one of Alvarado's daughters discussing the marriage and its dissolution.

The Government did not present any testimony at the hearing but submitted, ostensibly for impeachment purposes, the February 1998 affidavit executed by Villafranco. There was no indication that Villafranco was unavailable to testify.

On March 11, 2005, the IJ issued an oral decision granting Alvarado a good faith waiver to the joint petition requirement. After summarizing the evidence before him, the IJ concluded that Alvarado's testimony was "candid, specific, plausible, consistent with supporting documentation, internally consistent, and unembellished." The IJ found that the testimony of Alvarado, Enriquez, and Chavez was credible and that Alvarado established that her marriage to Villafranco was bona fide. The IJ observed that the only evidence that cast doubt upon Villafranco and Alvarado's good faith was the affidavit executed by Villafranco. Accordingly, the IJ granted Alvarado's petition to remove the conditions on her residence.

The Government filed an appeal with the BIA. The Government argued that, based on Alvarado's testimony, the evidence showed that she did not intend to establish a life together with Villafranco. The Government pointed to the affidavit testimony that Alvarado and Villafranco slept in separate bedrooms and that Villafranco lived with Alvarado for only one year. The Government also argued that the circumstances surrounding the preparation of Alvarado's

immigration papers (specifically, that Alvarado's son assisted her) were suspicious.

The BIA sustained the appeal by order dated February 23, 2007, concluding that Alvarado failed to establish that she entered into the marriage in good faith. The BIA stated that the IJ did not give sufficient weight to the affidavit executed by Villafranco. The BIA focused on the fact that both Villafranco and Alvarado were married to other individuals when they married each other and had to remarry after their respective divorces. Additionally, the BIA concluded, contrary to the IJ's factual finding, that the couple lived together for only one year. The BIA stated that the couple "did very little together, other than attend church and the husband driving the respondent to work." The BIA also explained that the evidence and affidavits did not support the conclusion that the marriage "fell apart due to the husband's drinking problem." Accordingly, the BIA found that Alvarado did not meet her burden and sustained DHS's appeal.

Alvarado filed a motion to reconsider, arguing that the BIA failed to correctly apply the "clearly erroneous" standard of review required by 8 C.F.R. § 1003.1(d)(3)(I) and that the BIA's consideration of Villafranco's hearsay affidavit violated due process. The BIA denied Alvarado's motion to reconsider by order dated July 9, 2007. It explained that, "[i]n giving [the affidavit] its proper weight to impeach the respondents, we gave significantly less weight to their testimony. Based on this and the many other factors discussed in our previous decision, we continue to find that the respondents have failed to meet their burden of proof." Alvarado then filed a petition for review in this Court. The Government filed a motion to remand to the BIA, conceding that the BIA's decisions indicated that the court improperly re-weighed the evidence. This Court granted the motion to remand for the BIA to re-examine the facts using the proper standard of review.

On June 13, 2008, the BIA again sustained the DHS's appeal. The BIA stated that Alvarado had the burden of proving that she entered into her marriage with Villafranco in good faith. The BIA referenced the decision of the IJ and noted that the IJ found the testimony presented by Alvarado to be credible. The BIA recited many of the facts found by the IJ and confirmed that it had not determined the factual findings to be clearly erroneous. However, the BIA concluded,

> [A]pplying the facts as found by the Immigration Judge to the law, we do not find that the respondent met her burden of establishing that her marriage to Mr. Villafranco was entered into in good faith. Even accepting the Immigration Judge's favorable credibility determination, we do not find that the testimony and evidence were sufficiently compelling to meet the respondent's burden of proving that she and Mr. Villafranco intended to establish a life together, especially in light of the adverse inference raised by the sworn statement executed by the respondent's former husband. As we noted in our decision of February 23, 2007, the testimony of the respondent herself calls into question the good faith nature of the marriage.

The BIA noted that the couple did not date prior to the marriage, there was no evidence that they were ever "romantically involved," they did not celebrate their wedding with family and friends, there was no evidence of shared celebrations, holidays, or vacations, the couple did not share a bedroom, the age difference was significant, and they resided together "for only 2 years and 4 months." The BIA concluded that the evidence showed that the marriage was simply one of convenience between friends.

The BIA also held that the documentary evidence provided by Alvarado was "insufficient to establish that the respondent intended to establish a life with Mr. Villafranco[,]" because their assets were not substantially intermingled, there was no evidence that Villafranco was made a co-owner of Alvarado's home, and the utility bills did not include both of their names. Thus, the BIA found

that the marriage was not entered into in good faith. Alvarado filed a timely petition for review.

## II. Standard of Review

This Court lacks jurisdiction to review the discretionary decisions of the BIA. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). We review the factual findings of the BIA under the substantial evidence standard, reversing only when the evidence compels a contrary result. *See Nakimbugwe v. Gonzales*, 475 F.3d 281, 283 (5th Cir. 2007). We review questions of law de novo. *Id.*

## III. Analysis

### A. Jurisdiction

DHS claims that this Court has no jurisdiction to consider Alvarado's petition for review, because the BIA's denial of the good faith waiver was a discretionary decision statutorily reserved to the Attorney General and immune from appellate scrutiny. However, the challenges raised by Alvarado constitute questions of law and constitutional claims properly before this Court pursuant to the REAL ID Act of 2005, notwithstanding the jurisdictional limitations contained within the INA.

Section 1252(a)(2)(B)(ii) of the INA proscribes judicial review of "any . . . decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]"[3] Under the INA, the granting of a hardship waiver for an individual is reserved to the discretion of the Attorney General. *See* 8 U.S.C. § 1186a(c)(4); *see also Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004). The Attorney General does not

---

[3] This jurisdiction-stripping provision is part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which was "aimed at protecting the Executive's discretion from the courts – indeed, that can fairly be said to be the theme of the legislation." *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 486 (1999).

have unfettered discretion; instead, such discretion is available only if the "alien demonstrates that" the marriage was entered into in good faith.[4]

The REAL ID Act of 2005 clearly permits appellate jurisdiction over Alvarado's petition. That amendment to the INA clarified the scope of the statute's jurisdiction-stripping provisions by adding the following language to § 1252:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). This Court has explained, "The REAL ID Act . . . removes jurisdictional bars to direct review of questions of law in final removal, deportation, and exclusion orders." *Rodriguez-Castro v. Gonzales*, 427 F.3d 316, 319 (5th Cir. 2005); *see also Larin-Ulloa v. Gonzales*, 462 F.3d 456, 460-61 (5th Cir. 2006) (noting that this Court has jurisdiction over petitions for review of constitutional claims or questions of law). Although the REAL ID Act took effect on May 11, 2005, this amendment applies retroactively to Alvarado's petition for review. *See* REAL ID Act of 2005, Pub. L. No. 109-13, § 106(b), 119 Stat. 231, 310 (2005) (making amendment containing § 1252(a)(2)(D) applicable "to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division"); *see also Rodriguez-Castro*, 427 F.3d at 319 n.1 (observing that § 1252(a)(2)(D) applies retroactively).

We agree with our sister circuits that § 1252(a)(2)(D) permits appellate review of the legal issues raised by Alvarado. Indeed, under the REAL ID Act, the "predicate legal question of whether the IJ properly applied the law to the

---

[4] Other potential bases for a hardship waiver are spelled out in the statute, but they are not at issue here, so we focus only on subsection (4)(B).

facts in determining the alien's eligibility for discretionary relief" is a question of law properly raised in a petition for review. *Nguyen v. Mukasey*, 522 F.3d 853, 854-55 (8th Cir. 2008); *Oei v. Attorney Gen. of the United States*, No. 07-4561, 301 F. App'x 157, 158-59 (3d Cir. Dec. 1, 2008) (unpublished opinion) (finding jurisdiction, because the question of whether the BIA used the wrong standard in overturning the IJ's factual findings was a question of law rather than fact).

Alvarado's petition for review is properly before this Court. She raises challenges to the standard of review applied by the BIA to the factual findings of the IJ and contends that the BIA erred in finding her evidence legally insufficient to establish good faith. She also presents a constitutional challenge to the admission of the Villafranco affidavit. Neither the IJ nor the BIA made the discretionary decision to deny Alvarado a good faith hardship waiver. Instead, the BIA held that Alvarado was statutorily ineligible for a hardship waiver because she failed as a matter of law to marshal sufficient evidence of good faith. These are legal and constitutional issues unrelated to the discretion reserved to the Attorney General. Accordingly, jurisdiction is proper.

B. Good Faith Determination

The BIA's consideration of the IJ's findings of fact and credibility determinations is limited to a clear error review. Under 8 C.F.R. § 1003.1(d)(3)(I), the BIA cannot "engage in de novo review of findings of fact determined by an immigration judge." Instead, the BIA reviews those facts, including credibility determinations, only to determine whether they are clearly erroneous. *Id.* The BIA may not overturn an IJ's factual findings "simply because the Board would have weighed the evidence differently or decided the facts differently had it been the factfinder." Board of Immigration Appeals: Procedural Reforms to Improve Case Management, 67 Fed. Reg. 54,878, 54,889 (Aug. 26, 2002) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)). "Where there are two permissible views of the evidence, the factfinder's

choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

Here, the BIA has obviously engaged in a de novo review of the IJ's findings of fact and credibility determinations. After twice faulting the IJ for giving insufficient weight to the Villafranco affidavit and then independently re-weighing the evidence to emphasize weaknesses in Alvarado's presentation, the BIA on remand recited the IJ's factual findings at some length and then purported to accept his credibility determinations. In lieu of finding clear error, the BIA instead concluded that the testimony and evidence was not "sufficiently compelling to meet the respondent's burden of proving that she and Mr. Villafranco intended to establish a life together, especially in light of the adverse inference raised by the sworn statement executed by the respondent's former husband." Correct application of the clear error standard could not have led to the BIA's conclusion that the evidence was legally insufficient to establish a good faith marriage.

"Common sense as well as the weight of authority requires that we determine whether the BIA *applied* the correct legal standard, not simply whether it *stated* the correct legal standard." *Kabba v. Mukasey*, 530 F.3d 1239, 1245 (10th Cir. 2008). Quite simply, the BIA is not entitled to state the correct legal standard but actually apply an incorrect standard. *See id.*; *see also Chen v. Bureau of Citizenship & Immigration Servs.*, 470 F.3d 509, 514-15 (2d Cir. 2006). The BIA may not re-weigh the evidence submitted and substitute its own judgment for that of the IJ absent clear error. *Id.* at 1245-46; *see also Chen* 470 F.3d at 514-15 ("Although the BIA used the phrase 'clearly erroneous' in its opinion, the review it conducted in fact was to independently assess Chen's credibility without giving deference to the findings of the IJ. This is de novo review and constitutes legal error by the BIA[.]"). Here, the BIA did not find clearly erroneous the factual findings or credibility determinations of the IJ, and it adopted such findings as its own. However, it all but ignored the significant

11

testimony and documentary evidence that was found by the IJ to be "candid, specific, plausible, consistent with supporting documentation, internally consistent, and unembellished." The BIA instead relied upon a hearsay document that was disregarded by the IJ and does not necessarily lead to an "adverse inference" about the nature of Alvarado's marriage.[5] It is clear that the BIA did not accept most of the findings of fact; otherwise, it could not have reached the conclusion that it did. We therefore hold that the BIA erred as a matter of law by misapplying the appropriate standard of review.

IV.     Conclusion

Because the BIA incorrectly applied a de novo review to deny Alvarado's good faith waiver, we REVERSE its June 13, 2008 order and REMAND this case for proceedings consistent with this opinion.

---

[5] We need not reach the issue of whether the affidavit's admission was a constitutional violation, because the IJ did not rely upon it in its findings of fact or credibility determinations. However, we do observe that the contents of the affidavit may lend equal credence to Alvarado's contention that she married in good faith.

OWEN, Circuit Judge, concurring:

I agree that the Board of Immigration Appeals (BIA) failed to apply the "clearly erroneous" standard set forth in 8 C.F.R. § 1003.1(d)(3)(i). I accordingly concur in much of the panel's opinion.

I do not, however, join in the conclusion expressed in footnote one of that opinion that "it appears that the evidence would establish eligibility for a hardship waiver." Whether a marriage was in good faith is generally a question of fact that is to be resolved not by this court but by the administrative process.[1] It is possible that on remand, the BIA may apply the correct standard of review and either reach the same conclusion that it has thus far reached or properly remand to the IJ for further proceedings.[2] Because it is not within the province of this court to pre-ordain the BIA's conclusion on remand, I do not join in the panel majority's statements that "[c]orrect application of the clear error standard could not have led to the BIA's conclusion that the evidence was legally insufficient to establish a good faith marriage," and "[i]t is clear that the BIA did not accept most of the findings of fact; otherwise, it could not have reached the conclusion that it did." There is at least some evidence that the marriage at issue was not in good faith. While the weight of the evidence in the present record may lead to an opposite conclusion, this court does not have jurisdiction

---

[1] *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 277 n.11 (5th Cir. 2008) ("Although the Ayanbadejos argue that the USCIS's basis for refusing to adjust John's status was a legal conclusion that a non-viable marriage precluded the change-in-status John requested, the USCIS's predicate determination of whether the Ayanbadejos had a bona fide marriage was a question of fact, not law, and therefore does not qualify for the § 1252(a)(2)(D) exception to the § 1252(a)(2)(B) jurisdiction stripping provision.").

[2] *See Ramirez-Peyro v. Gonzales*, 477 F.3d 637, 641 (8th Cir. 2007) ("Although we conclude that the Board did not appear to apply the proper standard of review and engaged in its own factfinding, we nevertheless decline Ramirez's invitation to engage in our own analysis of the facts and their implication for his claim. . . . The Board should be given the opportunity to discharge its statutory duty to review the IJ's findings for clear error and remand to the IJ for further proceedings if appropriate.").

to make essentially a factual determination that the marriage was in good faith.

I therefore concur in the judgment only.