**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-1949

CHRISTOPHER A. JOHNSON,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A090-223-433)
Immigration Judge:  Honorable Walter A. Durling

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 28, 2010

Before: AMBRO, CHAGARES and ALDISERT, Circuit Judges

(Opinion filed: May 20, 2010)

OPINION

PER CURIAM

Christopher Johnson, a citizen of Jamaica, was admitted to the United States in

1981, at age 10, as a non-immigrant visitor.  He adjusted his status to lawful permanent

resident in 1990. In 1993, Johnson was convicted in the District of Columbia of assault with intent to kill; he was sentenced to 15 years of imprisonment. An Immigration Judge ("IJ") found that Johnson was removable because of that conviction. See Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii) [8 U.S.C. § 1227(a)(2)(A)(iii)].

Johnson applied for protection under the United Nations Convention Against Torture ("CAT"). Three witnesses testified on Johnson's behalf: Dr. Maureen Irons Morgan, a Senior Medical Officer and psychiatrist at Bellevue Hospital in Kingston, Jamaica; Dr. Wendell Abel, a psychiatrist with the University Hospital of the West Indies; and Nancy Anderson, an attorney working for the Independent Jamaican Counsel for Human Rights. Together, their testimony indicated that Johnson would become homeless in Jamaica, lack access to medication and mental health care, act out in such a way as to come to the attention of the police, be placed in a detention center or prison, and be subjected to physical and sexual abuse by other inmates or guards. The IJ credited this testimony and granted relief.

The government appealed to the Board of Immigration Appeals ("BIA"), which sustained the appeal in March 2009. The BIA held that the IJ failed to properly apply the holding of Matter of J-J-F-, 23 I. & N. Dec. 912 (A.G. 2006). In that case, the Board concluded that where a CAT claim is based on a hypothetical chain of events, the petitioner must establish that each step in the chain is more likely than not to occur. Id. at 917-18 & n.4. The BIA found that Johnson failed to demonstrate that it is more likely than not that he will act violently and be detained. Even if Johnson could make the

2

requisite showing as to each proposed event, the Board concluded that "what isolated acts may occur would be a result of the poor conditions in the prisons . . . [and] do not reflect a specific intent on the part of the government . . . to torture" Johnson.  Johnson filed a timely petition for review.

We exercise jurisdiction to review the BIA's final order of removal under INA § 242(a) [8 U.S.C. § 1252(a)].  To be eligible for withholding of removal under the CAT, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2); see also Kamara v. Att'y Gen., 420 F.3d 202, 212-13 (3d Cir. 2005).  Torture is defined as the intentional infliction of severe pain or suffering "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 208.18(a)(1).  In considering an application for relief under the CAT, the IJ must consider "all evidence relevant to the possibility of future torture."  8 C.F.R. § 208.16(c)(3).  This evidence includes the specifics of the petitioner's situation and his "unique physical condition."  Lavira v. Att'y Gen., 478 F.3d 158, 166-72 (3d Cir. 2007), overruled on other grounds by Pierre v. Att'y Gen., 528 F.3d 180 (3d Cir. 2008) (en banc).  We review whether an alien has demonstrated a likelihood of torture under the substantial evidence standard.  See Wang v. Ashcroft, 368 F.3d 347, 350 (3d Cir. 2004).

If the CAT claim relies on a series of suppositions, the petitioner must demonstrate that each hypothetical event in the chain is more likely than not to occur.  See In re J-F-F-

, 23 I. & N. Dec. at 917-18 & n.4; see also Savchuck v. Mukasey, 518 F.3d 119, 123-24 (2d Cir. 2008).  As we recently clarified, what is likely to happen to the petitioner if removed is a factual question which the BIA reviews for clear error.  See Kaplun v. Att'y Gen., – F.3d –, 2010 WL 1409019, at *9-10 (3d Cir. Apr. 9, 2010).  The legal consequences of the underlying facts, *i.e.*, does what is likely to happen amount to torture, is a separate legal question subject to *de novo* review.  See id. at *9.  The BIA "must break down the inquiry into its parts and apply the correct standard of review to the respective components."  Id.

In this case, the Board appears to have improperly reversed the IJ's factual findings using a *de novo* standard of review.  See Kaplun, – F.3d –, 2010 WL 1409019, at *10.  For instance, the IJ determined that upon removal to Jamaica, Johnson "will quickly regress and his symptoms will return, including hallucinations, hearing voices, and engaging in bizarre and violent behavior;" his behavior "will bring him to the attention of the police, who are not trained to deal with mentally ill individuals;" that, as a result, he will be arrested and detained.  These findings were based on Johnson's medical records and his witnesses' testimony.[1]  The BIA determined that Johnson was not likely to act

---

[1] Dr. Irons Morgan testified that in her experience, "many persons who are deported and [who] suffer from mental illness . . . becom[e] homeless and . . . sometimes . . some of them get into trouble with the law."  Administrative Record ("A.R."), 164.  Dr. Abel stated that "the possibility is very great, extremely great that [mentally ill deportees who] do not have family support . . . are going to end up on the street."  A.R. 232.  With respect to someone with Johnson's diagnosis and history of violent behavior who is removed to Jamaica, Dr. Abel speculated that there is a "very strong possibility, almost 100% certain
(continued...)

4

violently and be detained, but failed to explain why the IJ's opposite conclusion was clearly erroneous.  See id.

The IJ also found that Johnson would be subjected to physical and sexual abuse by fellow inmates and guards.[2]  In particular, the IJ stated that the "record evidence clearly points to the fact that Jamaican government officers, in the performance of their official duties, frequently intentionally inflict severe pain or suffering upon mentally ill detainees and prisoners, and do so in the knowledge that they will not be held accountable for their transgressions."  But the Board concluded that, even if imprisoned, any mistreatment of Johnson would be attributable to poor prison conditions or other detainees.  Again, however, the BIA reached this conclusion without explaining why the IJ's findings were clearly erroneous.  See Kaplun, – F.3d –, 2010 WL 1409019, at *10.

Accordingly, the petition for review is granted and the matter is remanded for

---

[1](...continued)
that he's going to . . . relapse."  A.R. 236.  Ms. Anderson stated that the police will normally lock up a mentally ill person who is behaving strangely.  A.R. 184.

[2] According to Ms. Anderson, "a lot of the mentally ill [inmates who are placed in a hospital unit at a prison in Kingston] are . . . abused by other prisoners and even sometimes by the warders."  A.R. 193.  Ms. Anderson further testified that assaults against mentally ill inmates are "quite frequent[]."  A.R. 219.  In a prison in Spanish Town, the mentally ill are "fence[d] off" from the other prisoners because there were "so many incidences of . . . sexual and physical abuse."  A.R. 193-94.  Ms. Anderson testified that mentally ill prisoners are sexually abused and beaten "more frequently than the regular inmates simply because [the mentally ill prisoners] would be less likely to lodge a complaint."  A.R. 221; see also A.R. 195.

5

further proceedings consistent with this opinion.[3]  See Chen v. Bureau of Citz. and

Immig. Servs., 470 F.3d 509, 514-15 (2d Cir. 2006) (vacating and remanding because

BIA committed legal error by applying *de novo* review to IJ's factual finding).  As in

Kaplun, the Board "is free to revisit the underlying facts (including the likelihood of

future events), but it must do so under the clearly erroneous standard that applies to

facts."  Kaplun, – F.3d –, 2010 WL 1409019, at *11.

---

[3] The Government's request to withdraw its motion to dismiss is granted.  See Resp't's
Br. 2.