DENNIS JACOBS, Circuit Judge,
concurring in the grant of the petition for review and remand to the BIA for further consideration:
Petitioner has advanced three successive reasons for needing asylum. Each is an archetypal asylum narrative: (1) helping women escape an abortion clinic, (2) opposing his girlfriend’s forced abortion, (3) practicing Falun Gong. The immigration judge (“IJ”) credited the third narrative after Petitioner withdrew the first two, and granted asylum. The Bureau of Immigration Appeals (“BIA”) was “left with the definite and firm conviction that a mistake [was] committed,” see United States v. US. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948), and therefore rejected the IJ’s credibility finding as clearly erroneous and denied relief.
No one can doubt that, considering (as must be done) the totality of circumstances, there is room for profound skepticism. The reason for persecution is the *132 essence of an asylum claim; it is implausible that anyone forced from his land by persecution would not know why; yet this Petitioner lied about it (at least) twice. The majority remands for the BIA to adduce further reasons for its definite and firm conviction that Petitioner is lying now.
I
I agree with the majority opinion as to the legal standards that govern our review of the BIA. The BIA’s review of the IJ’s fact-finding is for clear error. When the BIA has concluded that clear error has been committed, our review is not de novo; rather, we decide whether the BIA has provided sufficient justification for its conclusion. Inherent in this distinction is the possibility that the BIA might believe the IJ committed clear error, while we might believe the IJ did not, and both conclusions might have “sufficient justification.”
I deviate from the majority opinion because, in my view, the BIA had ample reason to conclude that clear error was committed, given that the BIA reviews the totality of circumstances, and that the circumstances include two prior false narratives. But I concur rather than dissent because I see no harm in a remand to the BIA (to explain the obvious), and because specificity of reasons is good practice.
II
The REAL ID Act directs the agency to make a credibility determination in asylum proceedings based on the “totality of the circumstances” and “all relevant factors.” 8 U.S.C. § 1158(b)(l)(B)(iii). Among the factors bearing on credibility listed in the statute are candor, the inherent plausibility of the applicant or witness’s account, and consistency of account. Id. Thus an adverse credibility determination may be premised even on inconsistencies that do not “directly relate to the applicant’s claim of persecution,” so long as the totality of the circumstances establish that an applicant is not credible. Xiu Xia Lin v. Mu-kasey, 534 F.3d 162, 164-65 (2d Cir.2008) (per curiam) (“Under the standard established by the REAL ID Act, an IJ is required to evaluate inconsistencies in light of the ‘totality of the circumstances.’ ”).
“A finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” U.S. Gypsum Co., 333 U.S. at 395, 68 S.Ct. 525. This formulation of clear error coincides nearly verbatim with the BIA’s own regulations governing its standard of review. See Board of Immigration Appeals: Procedural Reforms To Improve Case Management, 67 Fed. Reg. 54,878-01, at 54,889 (Aug. 26, 2002) (citing Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).
The BIA determined that Petitioner’s explanations for his lies “are not plausible or consistent,” and that the IJ committed clear error in determining that Petitioner “reasonably and credibly explained his repeated lies to immigration officials.” Certified Administrative Record (“CAR”), at pp. 4-5. The BIA is the agency charged with administering our nation’s immigration laws, and so it is their definite and firm conviction that matters, not ours.
Among the totality of circumstances here are Lin’s shifting claims. On September 3, 2007, he issued a sworn statement that he feared returning to China because he released two pregnant women while working for a birth control facility. During his credible fear interview with an asylum officer ten days later, he testified that he feared returning to China because *133 his mistress suffered a forced abortion, which he opposed. None of those things ever happened to Lin. At his hearing before the IJ, he recanted the stories about his heroism in the clinic and the tragedy of his girlfriend’s forced abortion, and unveiled the entirely new claim that he suffered persecution in China for practicing Falun Gong, the account that was credited by the IJ.
To support its conclusion that the BIA improperly applied clear error review, the majority opinion principally relies on Chen v. Bureau of Citizenship & Immigration Services, 470 F.3d 509 (2d Cir.2006). In that case, the BIA ruled that discrepancies between the asylum applications and the asylum interview were dispositive as to that petitioner’s credibility. We remanded because the BIA had substituted its (adverse) credibility finding for the IJ’s, without “pointing] to any misstatements of fact, errors in analysis, flawed reasoning, or improper applications of law,” and thus performed (impermissible) de novo review. Id. at 514. Chen does not control the present case. In Chen, the discrepancies were in the details of the asylum claim, such as how Chen managed to escape from family planning officials after he was arrested. Id. at 512. Here, the falsehoods are not mere discrepancies concerning particulars; the two recanted falsehoods (like the third account) concern why Petitioner needs asylum at all. Cf. Ye v. Dep’t of Homeland Sec., 446 F.3d 289, 295 (2d Cir.2006) (“Because the BIA has identified a material inconsistency in an aspect of [Petitioner’s] story that served as an example of the very persecution from which he sought asylum, we hold that the inconsistency afforded substantial evidence to support the adverse credibility finding.” (citations and quotation marks omitted)).
Ill
Lin told the IJ that he advanced the two false (coercive population control) claims because he was told to do so by the snake-heads, who threatened that otherwise, if he were returned to China, his smuggling fees would not be forgiven.
There are sufficient reasons, implicit in the facts, for rejecting this explanation. The plausibility of the explanation for outright fabrication is itself sapped by the lie it is offered to explain. Moreover, as the BIA pointed out, there is no indication that Lin would ever be relieved of his obligation to pay the snakeheads the smuggling fees, regardless of whether his asylum claim was successful. Snakeheads do not have the refund policy of American department stores.
Moreover, the three successive accounts are not incompatible; so the snakeheads’ requirement that he proffer one false account or another does not logically preclude his offering the truth, if only as belt and suspenders. Neither the IJ nor the majority has posited a plausible explanation for why the Falun Gong fears were omitted. See Xiu Xia Lin v. Mukasey, 534 F.3d 162, 166 n. 3 (2d Cir.2008) (“An inconsistency and an omission are, for [credibility] purposes, functionally equivalent.”).
The majority argues that the proper question is not whether the snakeheads would actually carry out their threat, but rather whether Lin believed they would and committed perjury “because of that belief.” Maj. Op. at 130. However, any such subjective belief must still be objectively reasonable. Cf. Ramsameachire v. Ashcroft, 357 F.3d 169, 178 (2d Cir.2004) (“[A] well-founded fear of future persecution ... requires that the alien present credible testimony that he subjectively fears persecution and establish that his fear is objectively reasonable.”).
It is not objectively reasonable to believe that snakeheads conduct their busi *134 ness on honorable principles, that they give refunds, that any undertakings by them can be enforced in any forum, or even that they can be found for enforcement of contract obligations.
Additionally or alternatively, Lin claims that he failed to advance his Falun Gong claim because he “had no idea about American laws.” CAR at p.4. The plausible inference is that, if Lin had known that practicing Falun Gong was a valid basis for an asylum claim, he would have made it in his initial interviews. But Lin was given an open-ended opportunity to tell the immigration officials about any fear he had about being sent to China. He was advised:
U.S. law provides protection to certain persons who face persecution, harm or torture upon return to their home country. If you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview because you may not have another chance.
CAR at pp. 197, 295.
The BIA and the majority opinion consider whether Lin made any inconsistent statements about speaking to a lawyer. But those questions bear only upon when Lin would have become aware that Falun Gong was his ticket to stay in the United States. So it does not matter whether Lin made any inconsistent statements about speaking to or being represented by a lawyer. Nothing about his supposed ignorance of our law accounts for why he did not express a supposedly truthful fear of persecution for practicing Falun Gong, either on September 3 or September 13, 2007. He was told to tell the truth, the interviews were conducted in Mandarin (which Lin said was his best language), and there is no evidence that Lin failed to understand the questions. See Yun-Zui Guan v. Gonzales, 432 F.3d 391, 398-99 (2d Cir.2005) (noting factors to determine reliability of asylum and credible fear interviews, including whether alien understood the questions posed and whether those questions elicited details of an asylum claim).
Ignorance of American asylum law cannot assist Lin unless he was ignorant of the obligation to tell the truth, notwithstanding that that obligation was impressed upon him by immigration officials. In another context, we have held that “even an alien who is unfamiliar with the technicalities of immigration law can, under certain circumstances, be expected to comprehend that he has received ineffective assistance without being explicitly told so by an attorney.” Rashid v. Mukasey, 533 F.3d 127, 132 (2d Cir.2008). It makes no sense to impose on aliens stricter requirements to know that their lawyer is being ineffective than for knowing their own reasons for being afraid to return to their home country. Cf. Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) (“The general rule that ignorance of the law or a mistake of law is no defense ... is deeply rooted in the American legal system.”).
In any event, truth is not a quirk of American procedure.
I understand entirely the reasons why the BIA formed a “definite and firm conviction” that a mistake has been made. For that reason, however, the remand will entail no heavy lifting on the part of the BIA, and when it comes to reasoned dispositions, more cannot hurt.