# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 4, 2011

No. 09-60937

Lyle W. Cayce
Clerk

EDDY KOHWARIEN,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. ATTORNEY GENERAL,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals

Before GARZA, STEWART, and HAYNES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Petitioner Eddy Kohwarien, a native and citizen of Nigeria, seeks review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal for lack of jurisdiction. *See In re Eddy Kohwarien*, No. A097 531 146 (B.I.A. Nov. 24, 2009). The BIA found that Kohwarien had waived his right to appeal during removal proceedings before an Immigration Judge ("IJ"). Kohwarien now contends that his waiver was not knowing and intelligent. This matter turns on whether the record contains substantial evidence to support the BIA's finding that it lacked jurisdiction over Kohwarien's appeal (i.e., whether the record shows that Kohwarien knowingly and intelligently waived his appellate rights). We hold that it does, and deny the petition for review accordingly.

No. 09-60937

## I

In September 2003, Kohwarien was admitted to the United States on a B-1 non-immigrant business visa that allowed him to remain in the U.S. for a period not to exceed three months.  He failed to depart at the end of his visa term and settled in New York.  In 2006, the Department of Homeland Security ("DHS") initiated removal proceedings and served Kohwarien with a Notice to Appear.  The Notice informed Kohwarien of the charge against him—remaining in the United States for a period longer than permitted by his visa—and notified him, *inter alia*, that at the end of the proceedings he would have the right to appeal any adverse decision by the immigration judge.

At a March 2008 hearing, Kohwarien conceded, through counsel, that he was removable as charged, but he requested an adjustment of status based on his recent marriage to a U.S. citizen.  *See* 8 U.S.C. § 1255(a).  Alternatively, Kohwarien requested that he be granted voluntary departure.[1]  The Immigration Judge continued the hearing so that Kohwarien could assemble his adjustment of status application, along with several other applications for relief.

In November 2008, after the removal proceedings had been continued five times so that Kohwarien could prepare his adjustment application, Kohwarien notified the IJ that his attorney had been suspended from practice by her state bar.  The IJ granted Kohwarien seven additional continuances for the purpose

---

[1] Voluntary departure is a discretionary form of relief that allows certain aliens to leave the country willingly.  *See* 8 U.S.C. § 1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection" in lieu of being subject to removal proceedings).  The policy benefits the Government and the alien alike. *See generally Dada v. Mukasey*, 554 U.S. 1, 11–12 (2008).  When an alien requests voluntary departure at the conclusion of removal proceedings, the statute provides a voluntary departure period of not more than 60 days, whereas an alien can receive up to 120 days if he concedes removability and requests voluntary departure before or during removal proceedings.  *Compare* § 1229c(b)(2), *with* § 1229c(a)(2)(A).

2

No. 09-60937

of obtaining new counsel. Kohwarien never obtained new counsel, explaining in July 2009 that he "couldn't find [an attorney] in Texas."

In August 2009, after DHS determined that Kohwarien's adjustment of status application had been abandoned and all other avenues of relief had been exhausted, DHS asked the Immigration Judge to order Kohwarien removed. Kohwarien objected, asking that his removal proceedings be continued while he pursued an appeal of an unrelated New York criminal conviction. The IJ denied the request, explaining that Kohwarien's state criminal appeal had no bearing on his immigration proceedings. One week later, Kohwarien filed a motion to terminate the removal proceedings based on the pendency of his state criminal appeal, as well as his intention to renew his adjustment of status application.

Kohwarien appeared pro se at the August 21, 2009 hearing before the immigration judge. The IJ first addressed Kohwarien's motion to terminate the removal proceedings. The IJ explained to Kohwarien that he was removable for remaining in the United States longer than permitted by his visa, and not because of any criminal convictions, and the IJ denied the motion to terminate accordingly.

The IJ then explained to Kohwarien that he remained eligible for pre-conclusion voluntary departure despite his criminal conviction. This colloquy followed:

> Q: Whether you get relief is a totally separate issue. Whether you properly apply for it is a separate issue. You're obviously eligible for relief, so far you've denied wanting some relief. That's your tactical approach. Do you understand?
>
> A: Can you repeat that, Judge?
>
> Q: You're eligible for some relief and you didn't want it? Correct?
>
> A: What relief is that, Judge?

3

No. 09-60937

Q:   Pre-conclusion voluntary departure.

A:   Well, that was decided (indiscernible) my last proceeding last week.

Q:   I can't hear you.

A:   I, I . . .

Q:   You did not want it, correct?

A:   I never said that, Judge.

Q:   Well, do you want it, yes or no?

A:   Yes, Judge, I want it.

Q:   Are you waiving all rights of appeal, yes or no?

A:   I just said I wanted the relief.

Q:   Why don't you try listening to my question and answering it. Are you waiving all rights of appeal, yes or no?

A:   Appealing what, Judge?

Q:   I don't understand you.  Tell me again.

A:   Well, you just asked me if I'm waiving my right to appeal and I'm asking you, Judge, what am I appealing?

Q:   The decision of the Immigration Judge.

A:   What decision, Judge?

Q:   Judge Achtsam explained to you your rights and you said you understood them and now you don't?[2]

---

[2] The IJ appears to be referring to IJ Howard E. Achtsam's rights advisement at a January 14, 2008 hearing, during which he explained to Kohwarien that he could appeal the IJ's removal decision and verified that Kohwarien had received a form explaining his appeal

No. 09-60937

A:    Judge who?

Q:    Achtsam in Harlingen.

A:    Oh, yes, he was the first Judge (indiscernible) my adjustment
       of status.

Q:    . . . You seem to have forgotten.  I'll explain it to you.  To be
       eligible for pre-conclusion voluntary departure you must
       qualify, you must waive all rights of appeal, agree you are
       removable as charged, and pursue no other relief, must not
       have been convicted of certain convictions.  You must merit
       and timely ask for it, you must have a valid travel document
       or establish you're diligently getting it.  Do you understand,
       yes or no?

A:    Yes, Judge.

Q:    Now, are you asking for pre-conclusion voluntary departure?

A:    Yes, Judge.

Q:    Are you waiving all rights of appeal?

A:    Yes, Judge.

Just before closing the August 21 hearing, the IJ granted Kohwarien "voluntary
departure in lieu of removal on or before September 4, 2009."

Kohwarien filed a notice of appeal with the Board of Immigration Appeals
three days later, stating that he should not have been granted voluntary
departure before his criminal appeal was resolved.  In addition, Kohwarien
alleged that his criminal conviction was erroneously considered as part of his
motion to terminate the removal proceedings.

On September 2, 2009, Kohwarien moved the BIA for a "stay and
extension of voluntary departure" on the grounds that his state criminal appeal

---

rights. Judge Achtsam also explained to Kohwarien that to be eligible for voluntary departure,
"you must waive your right to appeal."

and immigration appeal remained pending. Kohwarien's motion indicated that he was "co-operating with [DHS] on issues of Voluntary Departure." Two days later, Kohwarien filed a second request for a stay of removal so that he could "acquire enough travel documents to gain lawful entry into [Nigeria]." In this second stay request, Kohwarien summarized the procedural background behind his voluntary departure order:

> Respondent was granted Voluntary Departure on August 21, 2009, stating that he should depart the United States on or before September 4, 2009. The Voluntary Departure relief was initiated by [DHS] and was granted by the Immigration Judge, but the time frame given by the Immigration Judge is not enough for Respondent to adequately and sufficiently prepare for his departure . . . .

In September 2009, Kohwarien filed a second notice of appeal with the Board, seeking to replace his August 24, 2009 notice of appeal "for good cause." In this second notice of appeal, Kohwarien stated that he wanted to "decline the order of Voluntary Departure by the Immigration judge dated August 21, 2009," and, further, that he did "not want this relief and wish[ed] to proceed with removal proceedings." Kohwarien asserted two grounds for appeal: that his state criminal conviction remained pending and that he was "entitled to apply for a green card" based on his marital status.

Kohwarien's merits brief to the BIA conceded that he had "answered affirmatively to the IJ's questions" and accepted the IJ's grant of voluntary departure. Kohwarien argued, however, that he did not "knowingly and intentionally advocate for this form of relief until DHS brought it to the attention of the IJ as a means of disposing of the case." In addition, Kohwarien argued that "simply saying 'yes' to the IJ's questions does not necessarily mean that the Respondent clearly and unequivocally understood the IJ's questions, the consequences of voluntary departure, and the rights he was giving up."

No. 09-60937

The BIA dismissed the appeal for lack of jurisdiction based on its factual determination that Kohwarien had waived his right to appeal. The Board found that the IJ had "clearly explained" to Kohwarien that his request for pre-conclusion voluntary departure would serve as a waiver of his appellate rights. The Board also rejected Kohwarien's claim that he was "more concerned with the issue of his criminal conviction," observing that the IJ had explained to Kohwarien that he was removable based on his presence in the U.S. after the term authorized by his visa, and not because of any criminal conviction. The Board further noted that Kohwarien was "provided six continuances to seek representation in his case." The BIA concluded that the IJ's grant of pre-conclusion voluntary departure was "in accordance with regulation." The Board dismissed Kohwarien's appeal, finding that he "has not made a sufficient argument that the decision to waive his appeal rights was not a knowing and intelligent one." This petition for review followed.

## II

We review the BIA's factual determinations under the substantial evidence standard. *See De Rodriguez v. Holder*, 585 F.3d 227, 233 (5th Cir. 2009). This standard "requires only that the Board's conclusion be based upon the evidence presented and that it be substantially reasonable." *Carbajal-Gonzalez v. I.N.S.*, 78 F.3d 194, 197 (5th Cir. 1996) (citation omitted). We will affirm the Board's decision unless the evidence compels a contrary result. *See De Rodriguez*, 585 F.3d at 233; 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). We review questions of law de novo. *De Rodriguez,* 585 F.3d at 233.

## A

Kohwarien contends that the BIA erred in dismissing his appeal because his appeal waiver was not knowingly and intelligently executed. Specifically,

7

No. 09-60937

Kohwarien argues that: (i) he did not request voluntary departure; (ii) the IJ did not inquire into whether Kohwarien accepted its decision as final; and (iii) Kohwarien did not understand the IJ's questions, the consequences of voluntary departure, or the rights he was giving up.

Kohwarien's first two arguments are unavailing. Although the IJ was the first to raise the issue of voluntary departure at the August 21, 2009 removal hearing, Kohwarien affirmatively requested this relief once the IJ presented it as an option. In addition, Kohwarien had previously requested voluntary departure, through counsel, in March 2008.

Kohwarien's reliance on *Ali v. Mukasey*, 525 F.3d 171 (2d Cir. 2008), for the proposition that his appeal waiver was invalid because the IJ failed to ask him whether he accepted its decision as final is misplaced. In *Ali*, the Second Circuit considered whether the BIA had correctly dismissed the petitioner's appeal for lack of jurisdiction. There, the BIA found that the petitioner had waived his right to appeal during removal proceedings based on nothing more than the petitioner's affirmative response, through counsel, to the IJ's inquiry whether both sides accepted the IJ's order as "final." *Id.* at 172–73. The Second Circuit reversed, finding that the BIA's determination that the petitioner had waived his right to appeal was not based on substantial evidence. *Id.* at 174; *see also United States v. Fares*, 978 F.2d 52, 56–57 (2d Cir. 1992) (finding that an IJ's explanation to an unrepresented alien that a removal order was "final" did not suffice to show that the alien understood that he had waived his right to appeal that order). *Ali* did not impose, as Kohwarien contends, a requirement that immigration judges verify an alien's understanding of the finality of the IJ's orders.

Kohwarien's third argument—that the record fails to show that he understood the IJ's questions, the consequences of voluntary departure, or the rights he was giving up—is also unavailing.

No. 09-60937

Under 8 C.F.R. § 1240.26(b)(1)(i), an immigration judge can only grant an alien voluntary departure before the conclusion of removal proceedings when certain conditions are met. One condition is that the alien waive appeal of all issues. *Id*. at § 1240.26(b)(1)(i)(D). Following such a waiver, the IJ's decision becomes final and may be executed immediately. *See* 8 C.F.R. §§ 1003.3(a)(1), 1003.39, 1241.1(b). The BIA lacks jurisdiction to review an immigration judge's decision if an alien has knowingly and intelligently waived his right to appeal. *See In re Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1322 (B.I.A. 2000); *In re Shih*, 20 I. & N. Dec. 697, 699 (B.I.A. 1993). The finding of a knowing and intelligent waiver "is inevitably a fact-specific inquiry." *Ali*, 525 F.3d at 174 (citation omitted).

Here, although the record suggests some initial confusion on the part of Kohwarien as to the scope of his appellate rights waiver, we do not find the evidence "so compelling that no reasonable fact finder" could conclude, as the BIA did, that Kohwarien's waiver was valid. *See Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 444 (5th Cir. 2001). Kohwarien affirmatively requested voluntary departure at a preliminary hearing in March 2008, and again at his final removal hearing in August 2009. At the August 2009 hearing, the IJ explained to Kohwarien the necessity of waiving all appellate rights to be eligible for pre-conclusion voluntary departure, which Kohwarien did without reservation. We do not require a specific incantation to evidence a valid waiver of appellate rights, but leave that matter to the immigration judge's discretion. *See Ali*, 525 F.3d at 171 ("We reaffirm the IJ's authority to notify an alien of his right to appeal and to seek a waiver of the right in any method that sufficiently safeguards the alien's right."); *see also Rodriguez-Diaz*, 22 I. & N. Dec. at 1323 ("Because the precise articulation of appeal rights required in any given case will necessarily depend on the circumstances of that case, we do not seek to alter any statement currently used by an Immigration Judge that satisfactorily

9

communicates the right to appeal."). The IJ's colloquy here provides substantial evidence to support the BIA's finding.

In addition, other aspects of the record undercut Kohwarien's claim that his waiver was not knowing and intelligent. The administrative record shows a pro se petitioner who clearly understood the nature of the proceedings against him and repeatedly availed himself of alternative methods for seeking relief, albeit unsuccessfully. Even after he had filed a notice of appeal with the Board, Kohwarien's "Motion for Stay and Extension of Voluntary Departure" supports the Board's conclusion that Kohwarien understood the consequences of his acceptance of pre-conclusion voluntary departure. We conclude, on the facts presented here, that the BIA's determination that Kohwarien waived his right to appeal was based on substantial evidence.

**B**

Relying on *Dada v. Mukasey*, 554 U.S. 1 (2008), Kohwarien contends alternatively that the BIA erred in dismissing his appeal because he moved to withdraw his voluntary departure request before the departure period had lapsed. Kohwarien argues that although "the procedure he employed to bring his claim to the attention of the administrative court [i.e., by notice of appeal] may have been different from that of *Dada* . . . the end result should be the same." We disagree.

In *Dada*, the Supreme Court addressed the conflict between two provisions of the Immigration Reform and Immigrant Responsibility Act of 1996. *Id.*, 554 U.S. at 4–5. One part of the Act concerns an alien's right to file "one motion to reopen" his or her removal proceedings. *See* 8 U.S.C. § 1229a(c)(7). Another part of the Act requires aliens found removable to depart within a statutory timeline, with the failure to do so carrying certain statutory penalties. *Dada*, 554 U.S. at 5. But pursuant to regulation, departure has the effect of withdrawing the alien's motion to reopen. *Id.* (citing 8 C.F.R. § 1003.2(d)). As the Court

recognized, these two conflicting commands—one directing voluntary departure and the other directing termination of the motion to reopen if the alien departs—placed aliens in a double bind. *Id.* The Court resolved the dilemma by holding that an alien looking to challenge the Board's decision, by way of a motion to reopen, must be permitted an opportunity to withdraw from a voluntary departure agreement prior to expiration of the voluntary departure period directed by statute. *Id.* at 22.

Unlike the instant case, the conflict resolved in *Dada* involved the petitioner's motion to reopen under 8 U.S.C. § 1229a(c)(7). As the Court noted, "[a] motion to reopen is a form of procedural relief that 'asks the Board to change its decision in light of newly discovered evidence or a change in circumstances since the hearing.'" *Id.*, 554 U.S. at 12 (citing 1 CHARLES GORDON, STANLEY MAILMAN, & STEPHEN YALE-LOEHR, IMMIGRATION LAW AND PROCEDURE § 3.05[8][c] (rev. ed. 2007)). In *Dada*, the petitioner's motion to reopen was predicated on new evidence reflecting his valid marriage to a U.S. citizen. *Id.* at 6–7.

Here, Kohwarien's proceeding before the BIA was an appeal of the IJ's decision and not a motion to reopen. This distinction is critical. Kohwarien's appeal relies not on changed circumstances or newly discovered evidence, but rather on an allegation of legal error. *Dada* does not provide an independent jurisdictional basis for the BIA to have considered Kohwarien's appeal on the merits. Instead, it focused on a different form of relief under a separate statutory provision. *Dada* is inapposite here. Kohwarien's sole option to avoid voluntary departure was to move to reopen the proceedings prior to the expiration of the departure period. *See* 8 C.F.R. § 1240.26(e)(1) ("The filing of a motion to reopen or reconsider prior to the expiration of the period allowed for voluntary departure has the effect of automatically terminating the grant of

No. 09-60937

voluntary departure."). Kohwarien failed to do so and does not argue that the BIA should have construed his pleadings as a motion to reopen.

**III**

For the foregoing reasons, the petition for review is hereby DENIED.[3]

---

[3] Kohwarien also contends that the immigration judge erred in granting pre-conclusion voluntary departure, and should have instead granted post-conclusion voluntary departure. In light of the fact that the IJ granted Kohwarien's affirmative request for pre-conclusion voluntary departure before the close of removal proceedings, we find this argument to be without merit.