**FILED**
**United States Court of Appeals**
**Tenth Circuit**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**June 26, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KAMRAN SALEEM,

    Petitioner,

v.

PAMELA BONDI,*

    Respondent.

Nos. 23-9568 & 24-9546
(Petitions for Review)

_____

### ORDER AND JUDGMENT**
_____

Before **PHILLIPS**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

The Board of Immigration Appeals (BIA) dismissed Kamran Saleem's appeal

from a final order of removal, ruling it lacked jurisdiction because he waived his

appellate rights.  Mr. Saleem moved the BIA to reconsider, but it denied his request.

He now challenges both decisions, arguing his appellate waiver was invalidated by

---

\* On February 5, 2025, Pamela Bondi became Attorney General of the
United States.  Consequently, her name has been substituted as Respondent, per
Fed. R. App. P. 43(c)(2).

\*\* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

translation problems and the poor conditions of his detention. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petitions for review.[1]

## I

Mr. Saleem is a Pakistani national who traveled to Brazil, where he obtained asylum and Brazilian citizenship. In 2022, he entered the United States and was detained by immigration officials. The Department of Homeland Security charged him with being inadmissible for failing to possess valid entry documents at the time of arrival. 8 U.S.C. § 1182(a)(7)(A)(i)(I). He sat for a credible-fear interview through an Urdu-language interpreter because he stated he "understand[s] Urdu well." R. at 76.[2] He also stated he speaks "English a little bit," his "Mother tongue is Pashto[, and he] speak[s] a little bit [of] Portuguese, too." *Id.* at 75. He established a credible fear of torture, so an immigration officer served him with a Notice to Appear before an immigration judge (IJ) to answer the charge of inadmissibility and an additional charge of removal for being a noncitizen present in the United States without having been admitted or paroled, *see* § 1182(a)(6)(A)(i).

At a preliminary hearing before an IJ, Mr. Saleem indicated Urdu was his "best language." R. at 188. The IJ conducted the hearing through an Urdu

---

[1] The BIA's underlying dismissal and its subsequent denial of reconsideration are each final decisions reviewable in separate petitions for review. *See Stone v. INS*, 514 U.S. 386, 405-06 (1995) (interpreting prior version of the Immigration and Naturalization Act). We consolidated the petitions under 8 U.S.C. § 1252(b)(6). *See Rodas-Orellana v. Holder*, 780 F.3d 982, 986, 989 (10th Cir. 2015).

[2] Unless otherwise indicated, all record citations are to the record in No. 24-9546.

interpreter, and Mr. Saleem elected to proceed without counsel. The IJ advised him of the charges and explained that if he disagreed with the IJ's decision, he could appeal, although he would need to reserve his right to appeal at the end of the case. "Alternatively," the IJ explained, "you can waive your right to appeal. But once you've waived your appellate rights, you've given up the opportunity to appeal. And you cannot change your mind about that after you've given up your rights. Now, do you understand all the rights I've advised you of?" *Id.* at 191-92. Mr. Saleem replied, "Yes." *Id.* at 192. He then conceded the factual allegations underlying the charges, which the IJ sustained, and applied for asylum, restriction on removal, and relief under the Convention Against Torture.

Several weeks later, Mr. Saleem returned to immigration court for a hearing on his applications for relief. The IJ swore-in the interpreter and asked Mr. Saleem if he could "hear and understand the interpreter." *Id.* at 205. He replied, "Yes, good morning." *Id.* The IJ instructed him, "If you don't understand a question, please tell me that you do not understand what's being asked." *Id.* at 211. The IJ explained, "[W]e're working through an interpreter and . . . [i]f you speak too much all at once . . . it will be difficult for her to interpret accurately." *Id.* The IJ therefore asked Mr. Saleem to "speak in about one or two sentence increments, pause to allow for the interpretation, and then . . . continue with your answer in about one or two sentence

increments[,] pausing for the interpretation." *Id.* After giving these instructions, the IJ asked Mr. Saleem if he had questions. Mr. Saleem replied, "No." *Id.*[3]

Mr. Saleem described his experiences in Brazil and Pakistan. Contrary to the statements he made during his credible-fear interview, *see id.* at 75, he denied that he could only "speak a little bit of Portuguese," *id.* at 248, testifying, "I never told anyone that I speak little Portuguese. I told everyone that I am very fluent [in] Portuguese. I speak it very well and I tell people my first language is Urdu, and my second language is Portuguese," *id.* at 249. Based on this and other testimony, the IJ found Mr. Saleem was not fully credible. The IJ found there were discrepancies and "things that just aren't plausible." *Id.* at 259. Ultimately, the IJ denied relief, reasoning that Mr. Saleem was resettled in Brazil, the harm he suffered in Brazil was not on account of a protected ground, and he failed to show a genuine fear of harm in

---

[3] The IJ misspoke when swearing in the interpreter. Counsel for the government had asked the IJ whether Mr. Saleem was an Urdu speaker or a Punjabi speaker. The IJ replied, "He's an Urdu speaker. [The interpreter] just needed to change – she does Punjabi and Urdu." R. at 204. The IJ then asked the interpreter, "Ma'am, do you swear or affirm to interpret accurately from English to Punjabi and Punjabi to English?" *Id.* The interpreter answered, "I do, your honor." Mr. Saleem does not cite this portion of the record, nor does he contend the interpreter incorrectly translated Punjabi rather than Urdu. Instead, he asserts "the interpreter spoke Hindi—a distinct language in which Mr. Saleem is not fluent." Pet'r's Br. at 12. But he does not develop this argument, other than adding that Hindi and Urdu may be "mutually incomprehensible" in formal settings, including in removal hearings, and that linguistic "differences seriously eroded [his] understanding of his appellate rights." *Id.* at 13 (italics and internal quotation marks omitted). We do not consider inadequately developed arguments. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

Pakistan.  The IJ therefore ordered him removed to Brazil, designating Pakistan as an alternative country of removal.

The IJ reminded Mr. Saleem of his appellate rights and asked whether he wished to appeal:

> Now, you have the right to appeal.  If you'd like to appeal, you need to reserve you right to appeal.  Once you reserve your right to appeal, you'll be given 30 days to file a written appeal.  When you appeal, you tell a higher court what mistakes you think I've made.  That process – you'll remain at the detention facility.  It's a written process.  You can hire an attorney if you'd like.  It generally takes about six to eight months if you're at a detention facility.  Alternatively, you can waive your right to appeal, but when you waive your right to appeal, you've given up your appellate rights and cannot change your mind about that. All right, so, sir, would you like to reserve your right to appeal or waive your right to appeal?

*Id.* at 261-62.  Mr. Saleem replied, "Nobody trusts me what I say, then what's the point of making an appeal?"  *Id.* at 262.  The IJ asked, "Okay.  So, are you waiving your appeal rights, or do you want to reserve those appeal rights?"  *Id.*  Mr. Saleem answered, "No, I don't want to make an appeal.  I want to go back.  What can I do they will just kill me that's just what I think."  *Id.*  The IJ replied, "Okay. So, the respondent has waived his right to appeal. . . .  This is a final order."  *Id.*

Despite waiving his appellate rights, Mr. Saleem obtained counsel and filed a notice of appeal.  The BIA dismissed the appeal, ruling it lacked jurisdiction because Mr. Saleem waived his appellate rights.  Mr. Saleem moved the BIA to reconsider, but it denied his request, ruling he was adequately advised of his appellate rights, the record disclosed no problems with the interpreter, and the evidence did not warrant reconsideration.  Mr. Saleem now seeks review of both BIA decisions.

5

II

We review the BIA's legal conclusions de novo and its factual findings for substantial evidence. *Miguel-Peña v. Garland*, 94 F.4th 1145, 1153 (10th Cir. 2024). Under the substantial-evidence standard, "we will not reverse unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

### A.   No. 23-9568:  The BIA Lacked Jurisdiction Because Mr. Saleem Knowingly and Voluntarily Waived His Right to Appeal.

This circuit has not established the standard applicable to our review of appeal waivers before the BIA.  But persuasive authority—both unpublished cases in this circuit and out-of-circuit cases—establishes the rule we apply here: "The BIA lacks jurisdiction to review an [IJ's] decision if [a noncitizen] has knowingly and [voluntarily] waived his right to appeal." *Kohwarien v. Holder*, 635 F.3d 174, 179 (5th Cir. 2011); *In re Rodriguez-Diaz*, 22 I. & N. Dec. 1320, 1322 (B.I.A. 2000) ("By waiving appeal, [a noncitizen] relinquishes the opportunity to obtain review of the [IJ's] ruling.  Thus, it is important that any waiver be knowingly and intelligently made.").  "The finding of a knowing and [voluntary] waiver 'is inevitably a fact-specific inquiry.'" *Kohwarien*, 635 F.3d at 179 (quoting *Ali v. Mukasey*, 525 F.3d 171, 174 (2d Cir. 2008)).[4]

---

[4] In *Rodriguez-Diaz*, 22 I. & N. Dec. at 1322, the BIA adopted a "knowing and intelligent" standard for evaluating appeal waivers, relying on *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), *superseded by statute on other grounds as stated in United States v. Palomar-Santiago*, 593 U.S. 321, 324 (2021). *Mendoza-Lopez* determined noncitizens were denied judicial review of their

Mr. Saleem contends his appeal waiver was not knowing and voluntary because "deficiencies in translation from English to Urdu deprived [him] of a full understanding of his appellate rights." Pet'r's Br. at 14. He says "he is far more comfortable in Pashto," and if he had "fully understood the proceedings in which he was participating *pro se*, he likely would have requested Pashto interpretation." *Id.* at 13. But Mr. Saleem elected to forgo counsel, stating through an Urdu interpreter, "I would like to speak on my behalf." R. at 192. He also repeatedly emphasized that Urdu—not Pashto—was his preferred language. He stated during his credible fear interview that he was comfortable proceeding in Urdu because he "understand[s] Urdu well." *Id.* at 76. He also told the IJ that Urdu was his "best language," *id.* at 188, and his "first language," *id.* at 249. This record does not compel the conclusion that the IJ erred in its factual determination that Urdu was Mr. Saleem's best language.

---

deportation proceedings because their appeal waivers were not "considered or intelligent." 481 U.S. at 840. Several circuits have since cited *Rodriguez-Diaz* for its "knowing and intelligent" standard. *See, e.g.*, *Kohwarien*, 635 F.3d at 179; *Ali*, 525 F.3d at 174; *accord Gonzalez Arnet v. U.S. Att'y Gen.*, 819 F. App'x 691, 694 (11th Cir. 2020) (citing *Mendoza-Lopez* for the "knowing and intelligent" standard). We have employed a variant of that standard—"knowing and voluntary"—in unpublished decisions. *See Arriago-Alvarado v. Holder*, 483 F. App'x 520, 521 (10th Cir. 2012); *Palacios-Yanez v. Holder*, 480 F. App'x 474, 477 (10th Cir. 2012). We are aware of no authority establishing a contrary standard in this context. Although Mr. Saleem invokes our "knowing and voluntary" standard, he cites authorities from the criminal context rather than the immigration context. *See, e.g.*, Pet'r's Br. at 11 (citing *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc)). We cite our unpublished decisions applying the "knowing and voluntary" standard for their persuasive value. *See* 10th Cir. R. 32.1(A).

Further, the record indicates that Mr. Saleem understood his appellate waiver. *See Ali*, 525 F.3d at 174 (evaluating whether "the interaction between the IJ and the [noncitizen] fairly supports the conclusion that the [noncitizen] . . . understood the nature of the waiver"). The IJ advised Mr. Saleem, both at the preliminary hearing and after he testified at the merits hearing, that he could either appeal or waive his appellate rights. *See* R. at 191-92, *id.* at 261-62. Although Mr. Saleem now says he thought he could change his mind after waiving his appellate rights, the IJ twice told him he could *not* change his mind. After the IJ first told him he could not change his mind, the IJ asked, "do you understand all the rights I've advised you of?" *Id.* at 192. Mr. Saleem replied unequivocally, "Yes." *Id.* And at the merits hearing, the IJ advised him again: "[W]hen you waive your right to appeal, you've given up your appellate rights and cannot change your mind about that. All right, so, sir, would you like to reserve your right to appeal or waive your right to appeal?" *Id.* at 261-62. This time, Mr. Saleem responded with frustration, not confusion, stating: "Nobody trusts me what I say, then what's the point of making an appeal?" *Id.* at 262. The IJ inquired again: "So, are you waiving your appeal rights, or do you want to reserve those appeal rights?" *Id.* Again, Mr. Saleem was clear, specific, and unequivocal: "No, I don't want to make an appeal. I want to go back." *Id.* These specific responses are highly probative of his understanding that he was irrevocably waiving his appellate rights.

Mr. Saleem also contends the "coercive circumstances of his detention[] invalidated his waiver of appellate rights." Pet'r's Br. at 9. He argues that violence

8

between other detainees and the deprivation of "appropriate food to break his fast during Ramadan" "rose to the level of coercion" such that "[h]is appeal waiver was not a voluntary choice but [instead was] driven by the severe circumstances of his detention." *Id.* at 17. But he neither made this argument nor pointed to any evidence to support this theory when he appealed to the BIA.[5] Mr. Saleem did not report to the IJ that the conditions of his detention were so unbearable that he felt coerced to waive his appellate rights. He mentioned nothing about violence from other detainees, nor did he testify that there was a lack of appropriate food at his detention facility to break his fast during Ramadan.

Instead, he expressed frustration with the perceived futility of an appeal because the IJ discredited his testimony, stating: "Nobody trusts me what I say, then what's the point of making an appeal?" R. at 262. Mr. Saleem characterizes his additional statement that "they will just kill me that's just what I think," *id.*, as reflecting "a man beaten down by his detention," Pet'r's Br. at 18. We do not doubt how Mr. Saleem may have perceived his circumstances, but there is no evidence tying this statement to the conditions of his detention. Consequently, on the record before us, we cannot say any reasonable adjudicator would be compelled to conclude that Mr. Saleem did not knowingly and voluntarily waive his appellate rights. The BIA therefore properly dismissed his appeal for lack of jurisdiction. *See Narine v.*

---

[5] To the extent the affidavit Mr. Saleem presented with his motion for reconsideration could be considered evidence of coercion, *see* R. at 12, ¶¶ 2, 9, the BIA permissibly denied the motion for reconsideration for other reasons, as we discuss further, *infra.*

*Holder*, 559 F.3d 246, 248 n.2 (4th Cir. 2009) ("Once a[ noncitizen] waives his right to appeal, the BIA no longer has jurisdiction to review a decision of an IJ.").

### B. No. 24-9546: The BIA Did Not Abuse Its Discretion in Denying Reconsideration.

We review the BIA's denial of reconsideration for abuse of discretion. *Berdiev v. Garland*, 13 F.4th 1125, 1130 (10th Cir. 2021). "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* at 1130-31 (internal quotation marks omitted).

Mr. Saleem first repeats his contention that he misunderstood he could not change his mind after waiving his appellate rights. In contesting the denial of reconsideration, he relies on a translation of his hearing by his attorney's paralegal, who determined the interpreter incorrectly translated that he could revoke his waiver. According to the paralegal's affidavit, the interpreter told Mr. Saleem he could "appeal at any time if you'd want to after that." R. at 15. Yet along with the paralegal's translation, Mr. Saleem also submitted to the BIA his own affidavit in which he admits "the interpreter at [his] final hearing explained" "[he] was permanently forfeiting [his] right [to appeal]," even though at the preliminary hearing the interpreter and his attorney told him "the exact opposite." *Id.* at 12. But Mr. Saleem did not have an attorney at the hearing, and this new, conflicting evidence is insufficient to suggest the BIA abused its discretion in denying reconsideration.

10

Finally, Mr. Saleem challenges the thoroughness of the BIA's decision, arguing it was "based on only a cursory examination of the transcript," Pet'r's Br. at 20, and it circumvented his main contention that the IJ incorrectly advised him of his appellate rights, *see id.* at 21. The BIA explained that it reviewed not just the transcript of the hearings, but also Mr. Saleem's affidavit and other evidence, in conjunction with the entire record. Based on that review, the BIA found that Mr. Saleem was adequately advised of his appellate rights and expressed no difficulty with the interpretation during his merits hearing. This explanation is sufficient to permit our meaningful appellate review. "The BIA is not required to write an exegesis on every contention. What is required is that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Maatougui v. Holder*, 738 F.3d 1230, 1242-43 (10th Cir. 2013) (brackets and internal quotation marks omitted). This standard was met here.

To the extent Mr. Saleem faults the BIA for not discussing his coercion argument, we note the BIA cited *Matter of O-S-G-*, 24 I. & N. Dec. 56 (B.I.A. 2006), which states that a motion to reconsider "contests the correctness of the original decision based on the previous factual record" and is not to be used to "raise[] additional legal arguments that are unrelated to those issues raised before the [IJ] and on appeal," *id.* at 57-58. Unlike the issue of whether he had adequate interpretation, which the BIA acknowledged and was tied to evidence already in the record concerning an interpreter, Mr. Saleem's contentions about his detention conditions

11

were based on new evidence and were only briefly mentioned in the supplement to his motion for reconsideration. He did not identify a coercion argument in his notice of appeal. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1120 (10th Cir. 2007) (explaining that under 8 C.F.R. § 1003.3(b), "[a noncitizen] taking an appeal of an IJ decision must specifically identify the findings of fact, conclusions of law, or both, that are being challenged," and that "the BIA has discretionary authority to dismiss . . . appeals lacking in specificity" (italics and internal quotation marks omitted), *abrogated in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023)). Nor did he raise a coercion argument in his motion for reconsideration. *See* R. at 46-50 (Mot. for Recon.). Instead, he briefly mentioned it for the first time when he moved to supplement his motion for reconsideration. *See id.* at 8. Given his failure to properly raise the issue, we cannot say the BIA abused its discretion in declining to consider it. *See Wei v. Mukasey*, 545 F.3d 1248, 1251 (10th Cir. 2008) (recognizing a motion to reconsider must "specify the errors of law or fact in the previous [BIA] order" (internal quotation marks omitted)). The BIA's stated reasons for denying the motion for reconsideration, *see* R. at 3 ("Upon review of the respondent's affidavit and other evidence, and in conjunction with the record of proceedings, we discern no error of fact or law in our prior decision that would warrant its reconsideration," and Mr. Saleem's "arguments to the contrary do not persuade us that reconsideration is warranted."), are adequate for our review and convince us the BIA did not abuse its discretion in declining to grant reconsideration on the coercion issue.

12

III

The petitions for review are denied.

Entered for the Court


Veronica S. Rossman
Circuit Judge