**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAFAEL PADILLA-ROMERO, JR.,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 07-72492

Agency No.
A037-803-555

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 3, 2010—Pasadena, California

Filed July 9, 2010

Before: Betty B. Fletcher and Richard A. Paez, Circuit
Judges, and Donald E. Walter, Senior District Judge.*

Per Curiam Opinion

---

*The Honorable Donald E. Walter, Senior United States District Judge
for the Western District of Louisiana, sitting by designation.

9897

## COUNSEL

John Richard Smith, San Diego, California, for the petitioner.

Monica G. Antoun, U.S. Department of Justice, Civil Division, Washington, D.C., for the respondent.

## OPINION

PER CURIAM:

Rafael Padilla-Romero, Jr., petitions for review of the Board of Immigration Appeals ("BIA") decision affirming the Immigration Judge's ("IJ") decision holding him statutorily ineligible for cancellation of removal. We deny the petition for review.

## FACTS AND PROCEDURAL HISTORY

After being caught on three separate occasions in early 1998 attempting to smuggle aliens into the United States and at least twice falsely claiming to be a United States citizen while doing so, Padilla-Romero was removed to Mexico. It is undisputed that at the time he was removed Padilla-Romero was a lawful permanent resident ("LPR") of the United States and met the statutory requirements for cancellation of removal under 8 U.S.C. § 1229b(a). It is likewise undisputed that he elected not to pursue this remedy and that the first removal terminated his status as an LPR. Subsequently, Padilla-Romero illegally reentered or attempted to illegally reenter the United States no fewer than five times, again repeatedly lying about his citizenship.

At his most recent removal hearing on March 16, 2006, Padilla-Romero asserted for the first time that he was still eligible for cancellation of removal under 8 U.S.C. § 1229b(a). He argued that, having met in 1998 § 1229b(a)(1)'s requirement that he hold LPR status for at least five years, he remained eligible for cancellation of removal notwithstanding his loss of LPR status eight years before the 2006 merits hearing. The IJ held that Padilla-Romero was ineligible for cancellation of removal because § 1229b(a) is available only to an alien with current LPR status, and ordered him removed. The BIA affirmed without opinion.

## DISCUSSION

Where the BIA affirms an IJ's decision without opinion, this court reviews the IJ's decision as though it were the BIA's. *De Mercado v. Mukasey*, 566 F.3d 810, 814 n.1 (9th Cir. 2009). We review questions of law de novo. *Padash v. INS*, 358 F.3d 1161, 1168 (9th Cir. 2004).

## I. INTERPRETATION OF "HAS BEEN" IN § 1229b(a)(1)

**[1]** 8 U.S.C. § 1229b(a) reads, in full:

> (a) Cancellation of removal for certain permanent residents. The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony.

"The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, *such status not having changed*." 8 U.S.C. § 1101(a)(20) (emphasis added). We are faced with the question of whether an alien in removal proceedings who at one time was an LPR and held that status for at least five years but who has since lost that status remains eligible for cancellation of removal under § 1229b(a). Although the statute is somewhat ambiguous, we hold that such an alien is not eligible for § 1229b(a) relief.

Padilla-Romero asserts that there is an ambiguity as to whether an alien must currently possess LPR status to be eligible for relief due to § 1229b(a)(1)'s use of the verb tense "has been." As a purely grammatical matter, the use of the present perfect tense "has been," read in isolation from the surrounding text of the statute, can connote either an event occurring at an indefinite past time ("she has been to Rome") or continuing to the present ("she has been here for five hours"). *See, e.g.*, *Wells, Waters & Gases, Inc. v. Air Prods. & Chems., Inc.*, 19 F.3d 157, 163 (4th Cir. 1994) (noting the ambiguity of the present perfect tense); Bryan A. Garner, Gar-

ner's Modern American Usage 802-03 (3d ed. 2009). Padilla-Romero urges that we interpret "has been" to mean that an alien is eligible for relief under § 1229b(a) if that alien has, at any indefinite past time, held LPR status for five years. In interpreting the statute, however, our task is to discern congressional intent. To perform that task, we do not consider "has been" in isolation from its context. *See Padash*, 358 F.3d at 1168, 1170-71.

**[2]** Looking at § 1229b(a)(1) as a whole, Padilla-Romero's proposed interpretation is a strained reading of this provision. Under the natural reading, the text requires that an alien applying for cancellation of removal under § 1229b(a) have current LPR status. The definition of "lawfully admitted for permanent residence," which requires that the alien's status "not hav[e] changed," provides strong support for this reading. 8 U.S.C. § 1101(a)(20). An interpretation of § 1229b(a)(1) that allowed aliens who are no longer LPRs to obtain cancellation of removal would be counter to Congress's intent, as expressed in § 1101(a)(20), that an alien may lose the benefits of LPR status. The caption to § 1229b(a), "Cancellation of removal for certain permanent residents" also suggests a requirement that the alien have current status as an LPR. *See Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007) ("Although statutory titles are not part of the legislation, they may be instructive in putting the statute in context.").

**[3]** Padilla-Romero argues that this interpretation will lead to an absurd result when considered along with § 1229b(a)(2) and § 1229b(d). Under § 1229b(a)(2), an alien is eligible for cancellation of removal only if he "has resided in the United States continuously for 7 years after having been admitted in any status." Padilla-Romero argues that because § 1229b(a)(1) and (2) both use the present perfect tense, they must be interpreted similarly. Therefore, he argues, if "*has been* an alien lawfully admitted for permanent residence" requires that an alien have current LPR status when applying

for cancellation of removal, "*has resided* in the United States continuously" under § 1229b(a)(2) must similarly require that the alien currently reside in the United States when applying for relief. Under § 1229b(d), however, an alien's period of continuous residence in the United States terminates when the alien is served with a notice to appear or commits an offense rendering him or her removable or inadmissable. Accordingly, Padilla-Romero argues, no alien could ever establish that his residence has continued until the time of his application for relief—which necessarily comes some time after the notice to appear or the criminal offense that terminates the period of continuous residence—and therefore no alien could meet § 1229b(a)(2)'s requirement.

**[4]** Padilla-Romero, however, misapprehends the stop-time provision in § 1229b(d). That provision does not terminate an alien's actual residence, but rather simply establishes the point at which an alien's residence in the United States will stop counting toward § 1229b(a)(2)'s 7-year continuous residence requirement. Indeed, we need look no further than § 1229b(b)(1)(A) to see the fallacy of Padilla-Romero's argument: If his reading of § 1229b(d) were correct, then § 1229b(b)(1)(A) would involve exactly the absurd result he challenges. That section authorizes relief only if an alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of [his] application," but § 1229b(d) provides that a "period of . . . continuous physical presence in the United States shall be deemed to end" when the alien receives a notice to appear or commits an offense rendering him removable or inadmissible. Thus, under Padilla-Romero's reading of § 1229b(d), no alien could ever be physically present "immediately preceding" the date of his application for relief. We conclude that the stop-time rule cannot have the meaning Padilla-Romero asserts and thus that no absurdity results from our interpretation of § 1229b(a)(1). Rather, it is Padilla-Romero's interpretation, which would both encourage illegal reentry and allow aliens who have lost LPR status decades

ago to regain that status merely by crossing the border, that would produce absurd results.

**[5]** In light of the foregoing, the inclusion in § 1229b(b)(1)(A) of an express requirement that an alien's period of continuous physical presence be "immediately preceding" the application for cancellation of removal does not undermine our interpretation of § 1229b(a)(1). Section 1229b(a)(1), when read as a whole and in the context of the definition of "lawfully admitted for permanent residence," is sufficiently clear that such additional text would be superfluous.[1] The legislative history of § 1229b(a) also supports this conclusion. In *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1027-28 (9th Cir. 2005), we explained that Congress enacted the current § 1229b(a) to resolve a circuit split as to when time began to accrue for purposes of cancellation of removal. There is no suggestion that Congress intended to remove the requirement in former Immigration and Nationality Act § 212(c), which the text of current § 1229b(a) replaced, that an alien applying for cancellation currently have the status of an LPR. *Cf. Cuevas-Gaspar*, 430 F.3d at 1028 (concluding that Congress's intent was to resolve this circuit split and rejecting the BIA's argument that it intended a substantive change on an unrelated issue).

## II. THE BOARD'S PROCEDURE TO AFFIRM WITHOUT OPINION

Padilla-Romero argues that the BIA's decision to affirm without opinion in this case was a violation of the BIA's regulations, and thus violated due process and the APA. Since we decide his claim on the merits, this argument has no force. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 855 (9th Cir. 2003) ("The decision to streamline [is] indistinguishable from the merits.").

**PETITION DENIED.**

---

[1]Padilla-Romero concedes that the context of a statute can render such explicit text unnecessary.