# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 29, 2026

Lyle W. Cayce
Clerk

No. 25-60268

———————————

Said Ghazi,

*Petitioner*,

*versus*

Todd Wallace Blanche, *Acting U.S. Attorney General*,

*Respondent*.

———————————

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A040 415 393

———————————

Before Stewart, Engelhardt, and Douglas, *Circuit Judges*.
Per Curiam:[*]

Petitioner seeks review of a decision of the Board of Immigration Appeals (BIA) upholding the Immigration Judge's (IJ) denial of a waiver under 8 U.S.C. §§ 1186a(c)(4)(A) and (B), and cancellation of removal under 8 U.S.C. § 1229b(a). For the following reasons, the petition for review is DISMISSED in part and DENIED in part.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-60268

## I. Factual & Procedural Background

In March of 1993, Elaine Ende, a United States citizen, was visiting her friend Fatima Ghazi (Fatima),[1] when she noticed a picture of Fatima's brother, Said Ghazi (Ghazi), a native and citizen of Morocco. Ende then obtained Ghazi's number from Fatima, contacted Ghazi over the phone, and the two began having weekly telephone conversations.[2] In June of 1993, Ende flew from the United States to Morocco to meet Ghazi in person. Within a day of their first meeting, Ende proposed marriage and Ghazi accepted. On June 29, 1993, Ghazi and Ende married in Casablanca, Morocco. About a week after the wedding, Ende left Morocco, returned to her home in Houston, Texas, and began making plans for Ghazi to move to the United States.

In October of 1994, Ende secured an Immigrant Visa and Alien Registration form for Ghazi. On November 20, 1994, Ghazi was admitted to the United States as a conditional permanent resident and went to Ende's home in Houston. *See* 8 U.S.C. § 1186a(a)(1). According to Ende's written statement dated December 2, 1994, on November 24, 1994, approximately four days after his arrival to the United States, Ghazi moved his belongings out of Ende's home while she was out running errands and she has not seen or spoken to him since.[3]

In January of 1995, Ende filed a petition to annul the marriage. In her petition for annulment, Ende stated that Ghazi fraudulently induced her to

---

[1] Fatima is a lawful permanent resident of the United States.

[2] Ghazi states that he and Ende spoke over the phone approximately twice a week for fifteen minutes each time.

[3] According to Ghazi, he stayed with Ende for about twenty days before leaving her home. He concedes that he has not contacted her since the day he left.

enter into the marriage. Although he was served a copy of the petition, Ghazi never responded, answered, or appeared in the annulment proceedings. On June 1, 1995, the marriage between Ende and Ghazi was legally annulled.

In January 1997, Ghazi filed an I-751 petition to remove the conditions on his permanent resident status. Because I-751 petitions ordinarily must be filed jointly with the United States citizen spouse, Ghazi sought a waiver under § 1186a(c)(4)(B) on the basis that he was unable to meet the joint filing requirement through no fault of his own.[4] In his petition, Ghazi claimed that he entered into the marriage with Ende in good faith, but the marriage was thereafter terminated through annulment. On January 10, 2003, United States Citizenship and Immigration Services ("USCIS") denied Ghazi's petition and his status as a conditional lawful permanent resident was terminated. The Notice of Termination explained that Ghazi's I-751 petition was denied on grounds that he entered into the marriage with Ende "for the purpose of circumventing Immigration Law" and thus he had failed to show that he entered into the marriage in good faith.

In July 2008, the U.S. Department of Homeland Security issued Ghazi a notice to appear charging him as removable because his status as a conditional lawful permanent resident had been canceled due to the annulment of his marriage to Ende. He then filed another I-751 petition, in which he again sought a waiver of the joint filing requirement. In his petition, he stated that he entered into the marriage with Ende in good faith, but it was

---

[4] *See* 8 U.S.C. § 1186a(c)(1)(A); *Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 230 (5th Cir. 2009) ("To avoid deportation to her native country of Mexico, [the petitioner] was charged with establishing entitlement to a hardship waiver to excuse compliance with the joint filing requirement. In order to qualify for a hardship waiver under the 'good faith' prong, [the petitioner] had to prove that her marriage was entered into in good faith and that she was not at fault in failing to meet the statutory condition. *See* 8 U.S.C. § 1186a(c)(4)(B).").

terminated through annulment, and that the termination of his permanent resident status would result in extreme hardship. Ghazi appeared before an IJ at a master calendar hearing on January 8, 2009, and the IJ sustained the charge of removability. *See* 8 U.S.C. § 1227(a)(1)(D)(i). On April 7, 2010, USCIS denied Ghazi's additional I-751 petition.

Thereafter, Ghazi renewed his I-751 petition and sought a waiver of the joint filing requirement pursuant to § 1186a(c)(4)(B), which applies when a good-faith marriage is terminated, and § 1186a(c)(4)(A), which applies where extreme hardship would result if the noncitizen were removed. Ghazi also filed an application for cancellation of removal for certain permanent residents, pursuant to 8 U.S.C. § 1229b(a).

A merits hearing was held in October 2021. There, the IJ first determined that Ghazi was not credible based on the inconsistencies between his testimony and the documentary record evidence. The IJ observed that although Ghazi claimed that he consistently called Ende after their wedding in June 1993, there was a letter written to Ghazi from Ende in December 1993 stating "Said, give me a telephone call sometime. I've called you so many times and you've never phoned me." Another letter from Ende to Ghazi dated February 1994 stated "Sweetie, the tradition in America is for the man to phone his wife. Why don't you ever telephone me?" When confronted with this evidence, Ghazi claimed that he could not afford to call Ende because he was unemployed.

The IJ further noted that there was also inconsistent record evidence as to who terminated the marriage. Although Ghazi had stated that Ende had kicked him out of the marital home, there were letters from Ghazi to the Government stating that he "left Ms. Ende about a year into the relationship." Letters from Ghazi's family members also stated that it was Ghazi who left Ende, rather than Ende having left Ghazi. When asked about

these discrepancies, Ghazi was unable to provide a plausible explanation. Given the inconsistencies between Ghazi's testimony and the record evidence, the IJ concluded that he was not credible.

Ghazi's brother, Salaheddine Ghazi (Salaheddine),[5] testified at the merits hearing in support of Ghazi's applications. Salaheddine testified that he believed that Ghazi's and Ende's marriage was valid even though he did not attend the wedding and rarely discussed Ghazi's personal life with him. Salaheddine further testified that, at some point after Thanksgiving in 1994, Ghazi told him that he and Ende were "having problems" and that Ende had "throw[n] him out" so he picked up Ghazi from Ende's home and took him to Fatima's home. The IJ noted that there were no inconsistencies or omissions between Salaheddine's testimony and the documentary evidence and thus, he was generally credible. However, the IJ nevertheless observed that because Salaheddine was Ghazi's brother, he had "more incentive to diminish, minimize, or alter the facts." For that reason, the IJ afforded Salaheddine's testimony "reduced weight in comparison to any documentary evidence in the record based on bias."

The IJ next addressed whether Ghazi had met his burden of proving eligibility for a waiver of the requirement that he file jointly with his qualifying spouse to remove the conditions on his permanent residence status. *See* 8 U.S.C. §§ 1186a(c)(4)(A)–(B). As to Ghazi's eligibility for a waiver on grounds of good faith, the IJ observed that there were facts in the record that "pull[ed] in both directions as to the legitimacy or the good faith of the marriage." Although the record supported that Ghazi and Ende had a large wedding and honeymoon in Morocco and had consummated their marriage, the two never shared children, property, insurance, taxes, or bills.

---

[5] Salaheddine is a United States citizen.

Additionally, despite the fact that Ende had sent Ghazi and his family cards and gifts and frequently attempted to contact Ghazi over the phone, there was no evidence in the record that Ghazi reciprocated the relationship with Ende. Indeed, the record reflected the opposite—Ende had requested numerous times that Ghazi contact her, but he never did. Moreover, the IJ doubted Ghazi's claim that he resided with Ende for twenty days after arriving to the United States—as opposed to four days as Ende claimed—ultimately determining that regardless of the truth, both time periods were minimal. The IJ concluded based on these facts that although it appeared that Ende held a genuine affection for Ghazi and had entered into the marriage in good faith, the same was not true for Ghazi. The IJ then denied Ghazi's request for a waiver based on the good-faith exception to the joint filing requirement. *See* 8 U.S.C. § 1186a(c)(4)(B).

Turning to Ghazi's request for a waiver based on extreme hardship, the IJ was also unpersuaded. The IJ noted that although Ghazi was close to his two siblings in the United States, Fatima and Salaheddine, he could not show hardship during the relevant two-year time period which began when he was admitted as a conditional lawful permanent resident in November of 1994 and lasted until November of 1996. Although Ghazi stated that he was temporarily unable to work at some point between 1996 and 1997 due to an accident and had helped Fatima after she was diagnosed with diabetes in 1999, these events fell outside of the relevant time period and there was no other evidence presented regarding hardship. The IJ further observed that "the severing of family ties to family in the United States as well as economic hardship are common results of deportation and removal" and thus insufficient to rise to the level of extreme hardship. In light of these facts, the IJ also denied Ghazi's request for a waiver based on the extreme hardship exception to the joint filing requirement. *See* 8 U.S.C. § 1186a(c)(4)(A).

With respect to Ghazi's request for cancellation of removal pursuant to 8 U.S.C. § 1229b(a), the IJ concluded that he was ineligible because he had not been lawfully admitted for permanent residence for five years at the time of his application. Although Ghazi had been admitted as a conditional lawful permanent resident in prior years, his status changed when the USCIS denied his I-751 petition in 2003, and his status was terminated. The IJ squarely rejected Ghazi's argument that because he had been admitted as a lawful permanent resident for five years at one point in his life, he had satisfied the statute's residency requirement even though he no longer held that status. The IJ reasoned that "[i]f Congress intended to require that an applicant, at any point, have been lawfully admitted for permanent residence for five years, it could have expressly stated so." Citing *Matter of Longstaff*, the IJ continued that the phrase "lawfully admitted for permanent residence" refers to "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, *such status not having changed*." 716 F.2d 1439, 1441 (5th Cir. 1983) (emphasis added). Thus, because Ghazi's status as a lawful permanent resident was revoked when USCIS denied his I-751 petition in 2003, his status had changed, and he was no longer eligible for cancellation. *Id*.

Based on the foregoing, the IJ concluded that Ghazi failed to make the requisite showing for a waiver under 8 U.S.C. §§ 1186a(c)(4)(A) or (B), and he was ineligible for cancellation of removal under § 1229b(a) because he did not satisfy § 1229b(a)(1), which sets forth the requirement that the noncitizen has been lawfully admitted for permanent residence for not less than five years. The IJ then ordered Ghazi's removal to Morocco.

Employing a "clearly erroneous" standard of review, the BIA upheld the IJ's decision. *See Alvarado de Rodriguez v. Holder*, 585 F.3d 227, 234 (5th Cir. 2009). As an initial matter, the BIA agreed with the IJ's adverse

credibility finding given the inconsistencies between Ghazi's testimony and the documentary evidence in the record regarding the telephone contact between the parties and which party had actually ended the relationship. The BIA also agreed that Ghazi was ineligible for a waiver to the joint filing requirement for his I-751 petition because he had failed to carry his burden of showing that he entered into the marriage with Ende in good faith or that extreme hardship would result if he was removed. *See* 8 U.S.C. §§ 1186a(c)(4)(A)–(B).

The BIA further upheld the IJ's decision that Ghazi had failed to satisfy the requirements for cancellation of removal under 8 U.S.C. § 1229b(a)(1). In so holding, the BIA rejected Ghazi's argument that the phrase "has been" as prescribed in section 240A(a)(l) of the Immigration and Nationality Act means "something that was but no longer is," as exemplified by the term "has-been." The BIA instead clarified that the term "has-been" is a colloquialism rather than a definition and did not cause it to alter its interpretation of the plain language of the statute. *See* 8 U.S.C. § 1229b(a)(1). Citing *Matter of Alvarado*, the BIA concluded that under a "plain language" analysis, Ghazi's requested relief required him to be a lawful permanent resident *when applying* for cancellation of removal. 27 I&N Dec. 27, 29 (BIA 2017). Thus, because Ghazi's conditional permanent resident status was terminated by USCIS in 2003, he could not satisfy his burden of proving that he had been a lawful permanent resident for at least five years at the time of his application, rendering him ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(1).

Ghazi filed this petition for review. *See also* 8 U.S.C. § 1252(b)(1).

## II. Discussion

Ghazi raises two challenges on appeal. First, he contends that the BIA erred in ruling that there was no clear error in the IJ's adverse credibility

No. 25-60268

determination. Second, he argues that he satisfied 8 U.S.C. § 1229b(a)(1) for purposes of cancellation of removal because he was a conditional lawful permanent resident for more than five years beginning in November 1994 until his status was terminated in January 2003. We address his arguments in turn.

We review the decision of the BIA and will consider the IJ's decision only to the extent it influenced the BIA. *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009). Generally, we review questions of law de novo and factual findings for substantial evidence. *Id.* However, pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii), we lack jurisdiction to review the factual findings relevant to purely discretionary decisions of the agency, such as the denial of a waiver under 8 U.S.C. § 1186a(c)(4). Nonetheless, § 1252(a)(2)(D) exempts "constitutional claims" and "questions of law" from the jurisdictional bar of § 1252(a)(2)(B). 8 U.S.C. § 1252(a)(2)(D); *Patel v. Garland*, 596 U.S. 328, 333 (2022). Mixed questions of law and fact fall within the statutory definition of questions of law in § 1252(a)(2)(D) are therefore reviewable. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225, 227–28 (2020). And as the Supreme Court has recently explained, "the statutory phrase 'questions of law' includes the application of a legal standard to undisputed or established facts." *Id.* at 227. Thus, although a decision to grant or deny a waiver of the joint filing requirement is discretionary and unreviewable, "the predicate legal question of whether the IJ properly applied the law to the facts in determining the [noncitizen]'s eligibility for discretionary relief is a question of law properly raised in a petition for review." *Yin v. Garland*, No. 21-60364, 2022 WL 3585472, at *1 (5th Cir. Aug. 22, 2022) (per curiam) (citation modified) (quoting *Alvarado de Rodriguez*, 585 F.3d at 234).

*A. Adverse Credibility & Waiver Under 8 U.S.C. § 1186a(c)(4)*

No. 25-60268

Ghazi contends that the BIA erred in upholding the IJ's adverse credibility finding and absent this error, his I-751 good-faith waiver would likely have been granted. He does not brief an argument related to the good-faith waiver itself except to state that it would have been granted but for the adverse credibility finding. Instead, he focuses on the IJ's purported missteps in concluding that he lacked credibility in light of the numerous conflicts between his testimony and the record evidence.

A noncitizen may obtain conditional permanent resident status by marrying a U.S. citizen. 8 U.S.C. § 1186a(a)(1). After marrying, the noncitizen spouse and the citizen spouse may jointly file a petition to remove the conditional basis of the noncitizen spouse's permanent resident status. *Id.* § 1186a(c)(1)(A). The joint petition must be filed during the ninety-day period preceding the two-year anniversary of the noncitizen spouse's grant of conditional status. *Id.* § 1186a(d)(2)(A). But if the noncitizen spouse and the citizen spouse separate within the first two years of marriage, the noncitizen spouse may still petition for a waiver of the joint filing requirement. *Id.* § 1186a(c)(4). To obtain a waiver, the noncitizen spouse must demonstrate that he entered into the marriage "in good faith" but the marriage was terminated, and he "was not at fault in failing to meet the requirements of [§ 1186a(c)(1)(A)]." *Id.* § 1186a(c)(4)(B).

Here, Ghazi only appeals the BIA's decision upholding the IJ's adverse credibility finding—a determination that is purely factual. *Chun v. INS*, 40 F.3d 76, 78 (5th Cir. 1994) (observing that "it is the factfinder's duty to make determinations based on the credibility of the witnesses"). As the Supreme Court stated in *Patel*, however, "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)." 596 U.S. at 347; *see also Wilkinson v. Garland*, 601 U.S. 209, 222 (2024) ("Under *Patel*, of course, a court is still without jurisdiction to review a factual question raised

in an application for discretionary relief . . . includ[ing] the IJ's underlying factual determination that [the petitioner] was credible."). Although *Patel* specifically references § 1252(a)(2)(B)(i) in terms of discretionary-relief proceedings, this court has expressly held that "§ 1252(a)(2)(B)(ii) [equally] strips federal courts of jurisdiction to review *any discretionary* decision or action rendered by the Attorney General," such as the denial of a waiver under 8 U.S.C. § 1186a(c)(4). *See Cheejati v. Blinken*, 106 F. 4th 388, 394 (5th Cir. 2024); *see also Alvarado de Rodriguez*, 585 F.3d at 233 (applying § 1252(a)(2)(B)(ii) to examine this court's jurisdiction to review the agency's denial of a waiver under 8 U.S.C. § 1186a(c)(4)). Consequently, because the IJ's adverse credibility finding was a factual determination made as part of a discretionary-relief proceeding, we are without jurisdiction to review Ghazi's claim that the BIA erred in upholding it. *Cheejati*, 106 F. 4th at 394; *see also Patel*, 596 U.S. at 347; *Wilkinson*, 601 U.S. at 222.[6] We therefore dismiss

---

[6] While we acknowledge that there is an exception to the jurisdiction-stripping bar in § 1252(a)(2)(B) for legal challenges and mixed questions of law and fact, Ghazi only appeals the BIA's decision upholding the IJ's adverse credibility determination which is purely factual. *See Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 225, 227–28 (2020). Although Ghazi claims that the IJ violated his right to cross-examine Ende when it admitted Ende's letters into the record and then relied on those letters to make an adverse credibility finding, the record confirms that Ghazi *himself* submitted Ende's letters to the Immigration Court. Indeed, Ghazi only objected to the admission of one letter into the record—Ende's statement that was attached to her petition to annul the marriage and submitted by DHS. The record reflects, however, that although the IJ overruled Ghazi's objection to the admission of that one letter, the BIA expressly stated that it did not rely on any of Ende's letters in affirming the IJ's finding of adverse credibility. Further, although Ghazi disagrees with the BIA's ruling upholding the IJ's decision not to credit his explanation regarding the inconsistences between his testimony and the record evidence, the IJ was not required to accept Ghazi's explanation since there were "other permissible views of the evidence." *See Suate-Orellana v. Barr*, 979 F.3d 1056, 1061 (5th Cir. 2020). In sum, Ghazi has failed to articulate a valid legal challenge or a mixed question of law and fact that would provide this court with jurisdiction to review his claim. *See Guerrero-Lasprilla*, 589 U.S. at 225, 227–28 (explaining that mixed questions of law and fact fall within the statutory definition of questions of law in § 1252(a)(2)(D) and are therefore reviewable).

Ghazi's appeal of the BIA's decision upholding the IJ's adverse credibility finding.

Likewise, because Ghazi only briefs an argument on appeal related to the IJ's adverse credibility finding, we do not address the related issue of whether the BIA erred in upholding the IJ's decision denying his application for a waiver from the joint filing requirement on grounds of good faith or hardship under 8 U.S.C. §§ 1186a(c)(4)(A) or (B). Ghazi contends in his reply brief that he has not forfeited his argument regarding the denial of his application for a waiver because he "raised all legal challenges on appeal to the BIA, including the denial of his waivers." But this court requires that an issue be adequately briefed for it to be preserved on appeal. *See Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal." (citing *United States v. Zuniga*, 860 F.3d 276, 284 n.9 (5th Cir. 2017))); *see also* FED. R. APP. P. 28(a)(8)(A) (requiring the appellant's argument to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"). Although Ghazi mentions in passing that his "good faith waiver would likely have been granted, but for the adverse credibility finding," he does not support his contention with legal arguments or authorities or citations to the record. Additionally, his brief on appeal does not even mention an argument related to the IJ's denial of the waiver on grounds of extreme hardship—it merely states that he filed the application, and it was denied. Accordingly, because Ghazi has failed to brief an argument on appeal regarding the BIA's decision affirming the IJ's denial of his application for a good-faith or hardship waiver from the joint filing requirement under 8 U.S.C. §§ 1186a(c)(4)(A) or (B), we consider any argument forfeited and address the issue no further.

*B. Cancellation of Removal Under 8 U.S.C. § 1229b(a)(1)*

Ghazi next argues that the BIA erred in affirming the IJ's ruling that he is ineligible for cancellation of removal on grounds that he failed to satisfy the five-year residency requirement at the time he filed his application. According to Ghazi, he satisfies the plain meaning of "has been" in 8 U.S.C. § 1229b(a)(1) because he satisfied the statute's five-year requirement at one point in his life—even though he did not satisfy it at the time he applied for cancellation. We are unpersuaded.

To be eligible for cancellation of removal under § 1229b(a), a noncitizen must show that he (1) "has been an alien lawfully admitted for permanent residence for not less than 5 years;" (2) "has resided in the United States continuously for 7 years after having been admitted in any status;" and (3) "has not been convicted of any aggravated felony." As relevant to § 1229b(a)(1), "[t]he term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20).

The record confirms that Ghazi was a conditional lawful permanent resident from 1994 until 2003 when USCIS terminated his status based on his failure to prove that his prior marriage to Ende was entered into in good faith. Thus, it is clear that Ghazi was not a lawful permanent resident when he applied for cancellation of removal under § 1229b(a) years later. This leaves only the question of whether Ghazi's prior conditional lawful permanent resident status between 1994 and 2003 satisfies the meaning of "has been" in § 1229b(a)(1).

Ghazi contends that under the plain meaning of the phrase "has been" in § 1229b(a)(1), he satisfies the statute's five-year residency

requirement because the phrase means "something that was but no longer is." The BIA rejected his argument reasoning that:

> The term "has-been" is a colloquialism rather than a definition, and does not cause us to alter our interpretation of the plain language in section 240A(a)(l) of the INA.

> The relief the respondent seeks is titled "Cancellation of removal for certain lawful permanent residents." INA § 240A(a), 8 U.S.C. § 1229b(a). Under a "plain language" analysis, the form of relief the respondent requested mandates that a qualifying individual must be a lawful permanent resident when applying. *See Matter of Alvarado*, 27 I&N Dec. 27, 29 (BIA 2017) (the Board has a duty to apply the plain language of the INA and not to create ambiguity where none exists). The respondent's conditional permanent resident status was terminated by DHS in 2003. Therefore, he cannot satisfy his burden of proving that he has been a lawful permanent resident for at least 5 years, and we conclude that he did not meet his burden of proving that he is eligible for section 240A(a) cancellation of removal. 8 C.F.R. § 1240.8(d).

Our circuit precedent supports the BIA's reasoning. *See Longstaff*, 716 F.2d at 1441 ("[A]s the definition provided by Congress plainly establishes: the term lawfully admitted for permanent residence means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant *in accordance with the immigration laws*, such status not having changed." (emphasis in original) (internal quotation marks omitted)). As the IJ explained in his oral decision, "[o]bviously as we know from the termination of [Ghazi's] conditional residence by USCIS" that "[Ghazi's] status changed." Thus, he is ineligible for cancellation of removal under §

No. 25-60268

1229b(a) as well as this court's precedent construing the statute. *Id.*[7] Accordingly, we uphold the BIA's decision affirming the IJ's denial of Ghazi's application for cancellation of removal under § 1229b(a).

## III. Conclusion

For the aforementioned reasons, the petition for review is DISMISSED in part and DENIED in part.

---

[7] The First and Ninth Circuits agree with our interpretation of 8 U.S.C. § 1229b(a)'s residency requirement. *See Cabrera v. Lynch*, 805 F.3d 391, 395 (1st Cir. 2015) (observing that the petitioner "lost [her] conditional status when USCIS formally denied the joint petition," and because she "had no status as a permanent resident, conditional or otherwise, when she filed the waiver petition, the BIA correctly determined that she was categorically ineligible to apply for cancellation of removal under 8 U.S.C. § 1229b(a)"); *Padilla-Romero v. Holder*, 611 F.3d 1011, 1013–15 (9th Cir. 2010) ("Under the natural reading, the text requires that [a noncitizen] applying for cancellation of removal under § 1229b(a) have current [lawful permanent resident] status. The definition of 'lawfully admitted for permanent residence,' which requires that the [noncitizen]'s status 'not have changed,' provides strong support for this reading. 8 U.S.C. § 1101(a)(20). An interpretation of § 1229b(a)(1) that allowed [noncitizens] who are no longer [lawful permanent residents] to obtain cancellation of removal would be counter to Congress's intent.").